## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TEVA PHARMACEUTICALS USA, INC., )<br><br>Plaintiff, )<br><br>-vs- )<br><br>BARINDER SANDHU, JEREMY DESAI, )<br>APOTEX INC., and APOTEX CORP., )<br><br>Defendants. ) | **CIVIL ACTION**<br><br>**NO.** _____<br><br>**JURY TRIAL REQUESTED** |

### COMPLAINT

Plaintiff Teva Pharmaceuticals USA, Inc. (hereinafter "Teva USA"), by and through its attorneys Goldberg Segalla LLP and Pepper Hamilton LLP, alleges as follows against Defendants Barinder Sandhu, Jeremy Desai, Apotex Inc. and Apotex Corp. (collectively "Defendants"):

### NATURE OF THE ACTION

1.      Teva USA is a manufacturer of specialty and generic pharmaceuticals, and the world's largest maker of generic pharmaceutical products.

2.      Teva USA brings this action to seek redress for the misappropriation of trade secrets and other confidential information by a former employee, Defendant Barinder Sandhu ("Sandhu").

3.      Sandhu was at all relevant times Senior Director of Regulatory Affairs, U.S. Generics, at Teva USA.

4.      Sandhu breached her Confidentiality Agreement that she executed on or about May 24, 2012 (as more fully described in paragraph 48) with, and fiduciary duty to, Teva USA

by improperly sharing Teva USA's trade secrets and other confidential information with Defendant Jeremy Desai ("Desai") and through him with Defendants Apotex Inc. and Apotex Corp. (collectively "Apotex").

5. On information and belief, at all times relevant to this Complaint, Desai was in a romantic relationship with Sandhu.

6. On information and belief, at all times relevant to this Complaint, Desai was a senior executive or President and Chief Executive Officer ("CEO") of Apotex Inc., one of Teva USA's direct competitors in the generic pharmaceutical market.

7. While employed by Teva USA, Sandhu intentionally shared with Desai, and through him with Apotex, trade secrets and other confidential information about Teva USA's products in development, including "Product X"[1].

8. Apotex and Desai used and continue to use Teva USA's trade secrets and other confidential information to benefit Apotex's own competitive product development, thereby allowing Desai and Apotex to improperly profit at Teva USA's expense.

9. Sandhu intentionally misappropriated and shared Teva USA's trade secrets and other confidential information by a variety of means that harmed Teva USA and improperly benefited Sandhu, Desai, and Apotex.

10. First, Sandhu knowingly and without authorization emailed Teva USA documents containing trade secrets and other confidential information, many specifically marked "Confidential," to Desai at his Apotex email account (jdesai@apotex.com) and thus through him directly to Apotex.

---

[1] "Product X" is a Teva USA product under development, the specific identity of which has been concealed to prevent additional disclosure of Teva USA's confidential information.

11.     Second, Sandhu knowingly and without authorization emailed Teva USA documents containing trade secrets and other confidential information, many specifically marked "Confidential," to her personal email account.

12.     On information and belief, Sandhu emailed the documents to her personal email account in order to share the documents with Desai and Apotex without detection by Teva USA.

13.     Third, in violation of Teva USA's policies, of which Sandhu was and/or should have been well aware, Sandhu used USB flash drives on her work-issued computer laptop to copy Teva USA files containing trade secrets and other confidential information.

14.     On information and belief, Sandhu used the USB flash drives to remove Teva USA files containing trade secrets and other confidential information from Teva USA's offices and secure electronic storage systems.

15.     On information and belief, Sandhu shared (via the USB flash drives) Teva USA files containing trade secrets and other confidential information with Desai and through him with Apotex.

16.     Fourth, on information and belief, Sandhu verbally communicated and provided printed copies of Teva USA trade secrets and other confidential information with Desai and Apotex.

17.     Finally, on information and belief, Sandhu deliberately ignored Teva USA's policies and impermissibly synced a folder containing trade secrets and other confidential information on her work-issued laptop computer to a cloud-based drive.

18.     On information and belief, Sandhu used the impermissible cloud-based drive in order to share hundreds of Teva USA documents containing trade secrets and other confidential information with Desai and through him with Apotex.

3

19.     On information and belief, after acquiring Teva USA's trade secrets and other confidential information, Desai and/or Apotex used the misappropriated information to gain a competitive advantage over Teva USA including, but not limited to, aiding in the development and/or sale of Apotex's products.

20.     On information and belief, on at least one occasion, Apotex employees openly discussed Teva USA's trade secrets and other confidential information related to Product X, and participated in a roundtable discussion in an effort to advance Apotex's potential market position of its competing generic product.

21.     On information and belief, Desai and/or Apotex profited from the misappropriation of Teva USA's trade secrets and other confidential information.

22.     On information and belief, Sandhu, Desai, and Apotex continue to improperly retain and profit from Teva USA's trade secrets and other confidential information. Teva USA seeks permanent injunctive relief against Sandhu, Desai, and Apotex to prevent them from continuing to benefit from the improper misappropriation of Teva USA's trade secrets and other confidential information, as well as the return of Teva USA's trade secrets and other confidential information.

23.     Against Sandhu, Teva USA also seeks damages for breaches of her contractual obligations and common law duties owed to Teva USA by virtue of her employment with Teva USA, and to recover damages for her willful and malicious misappropriation of Teva USA's trade secrets and other confidential information.  Teva USA also seeks punitive damages and attorneys' fees.

24.     Against Apotex and Desai, Teva USA seeks redress for their intentionally inducing, condoning, and supporting Sandhu's contractually impermissible and unlawful

behavior. Specifically, Teva USA seeks damages for Desai's and Apotex's willful and malicious misappropriation of Teva USA's trade secrets and other confidential information, Desai's and Apotex's tortious interference with Teva USA's Confidentiality Agreement with Sandhu, and Desai's and Apotex's aiding and abetting Sandhu's breaches of her common law duties to Teva USA. Teva USA seeks disgorgement of all of Desai's and Apotex's profits attributable to Defendants' misappropriation of Teva USA's trade secrets and other confidential information. Teva USA also seeks punitive damages and attorneys' fees.

## PARTIES

25.     Teva USA is a corporation organized under the laws of the state of Delaware, with its principal place of business located at 1090 Horsham Road, North Wales, Pennsylvania 19454.

26.     On information and belief, Sandhu is an individual who resided at all times relevant hereto at 409 Cotswold Lane, Wynnewood, Pennsylvania 19096.

27.     On information and belief, Desai is an individual who is a citizen of Canada and resided at all times relevant hereto at 33 Arjay Crescent, Toronto, Ontario M2L 1C6 Canada.

28.     On information and belief, Apotex Inc. is a foreign corporation organized under the laws of Canada, with its principal place of business located at 150 Signet Drive, Toronto, Ontario, Canada.

29.     On information and belief, Apotex Corp. is a U.S. subsidiary of Apotex Inc., and a Delaware corporation with a principal place of business at 2400 North Commerce Parkway, Weston, Florida.

## JURISDICTION

30.     This Court has subject matter jurisdiction under the Defend Trade Secrets Act of 2016, 18 U.S.C. §§ 1832-1839 ("DTSA"), and Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"), which each provide federal question jurisdiction over federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

31.     This Court has personal jurisdiction over Sandhu, Desai and Apotex because the facts underlying the matters in controversy substantially occurred within the Commonwealth of Pennsylvania, because the claims arise from Defendants' tortious conduct against Teva USA that either occurred in or were directly aimed at Pennsylvania, and the brunt of the resulting harm was felt by Teva USA in Pennsylvania.

32.     Pursuant to 28 U.S.C. § 1391, venue properly lies in this Court because the majority of Sandhu's access and transfer of Teva USA's trade secrets and other confidential information took place at Teva USA's offices in Horsham, in the Eastern District of Pennsylvania, and therefore a substantial part of the events giving rise to the claims in this action occurred in this judicial district.

## FACTS COMMON TO ALL COUNTS

**Background**

33.     On or about May 16, 2012, Teva USA offered Sandhu the position of Director, Regulatory Affairs, based in its Woodcliff Lake, New Jersey office.

34.     On or about May 24, 2012, Sandhu accepted the position of Director, Regulatory Affairs with Teva USA and executed an Employee Confidential Information Agreement ("Confidentiality Agreement").

35.     Teva USA provided Sandhu with an initial annual salary of $155,000 plus eligibility to receive a bonus equal to 25% of her annual base salary.

36.     Teva USA provided Sandhu with temporary housing for up to six months and relocation benefits to move from Brampton, Ontario to closer proximity to Woodcliff Lake, New Jersey.

37.     On information and belief, at or around this time, Sandhu resided in Nanuet, New York.

38.     Sandhu formally commenced her employment with Teva USA on June 25, 2012.

39.     On or about June 25, 2012, Sandhu executed the "Teva Pharmaceuticals Human Resources Policies Employee Acknowledgement" in which she acknowledged that she was provided and read Teva USA's various policies, which are intended to protect Teva USA's trade secrets and other confidential information as detailed further below.

40.     In or around early 2014, Teva USA transferred Sandhu from its Woodcliff Lake office to its Horsham, Pennsylvania office.

41.     At or around the time Teva USA transferred Sandhu to its Horsham office, Sandhu relocated her residence from New York to the Eastern District of Pennsylvania.

42.     On information and belief, at or around the time of Sandhu's transfer, she was involved in a romantic relationship with Desai.

43.     On information and belief, Desai resided and/or cohabitated with Sandhu in Pennsylvania.

44.     On May 12, 2014, Sandhu was promoted to Senior Director, Generics Regulatory Affairs Post-Approval at Teva USA, which was a role related to products that already had been approved by the U.S. Food and Drug Administration ("FDA").

45.    With her promotion, Teva USA increased Sandhu's compensation to a base salary of $193,000 with a potential annual bonus of up to 30% of the base salary.

46.    On or about August 27, 2014, Desai was named President and CEO of Apotex.

47.    Sandhu was a trusted Teva USA employee, who gave Teva USA no reason to question her loyalties to Teva USA or Teva USA's reasonable belief that Sandhu would not knowingly and intentionally disclose Teva USA's trade secrets and other confidential information.

**Teva USA's Confidentiality Agreement, Related Policies and Trade Secret Protection**

48.    Sandhu's May 24, 2012 Confidentiality Agreement with Teva USA provides, in pertinent part:

1. During employment with the COMPANY, EMPLOYEE will devote all best efforts only to the interests of the COMPANY and will not participate in the planning, operation, or management of any activity competitive with the COMPANY'S interest and will not otherwise engage in any activity in conflict with the interests of the COMPANY except as permitted and authorized in writing by an officer of the COMPANY.

*      *      *

3. EMPLOYEE shall not disclose or use at any time, either during or after termination of employment, except as required in the performance of duties to the COMPANY, any secret or confidential information, whether or not developed by EMPLOYEE, unless EMPLOYEE shall first obtain written consent by an officer of the COMPANY.  Secret or confidential information shall include know-how, designs, formulae, manufacturing, fabrication and technological processes, devices, machines, inventions, research or development projects, plans for future development, materials of a business nature, financial information, client information, sales and marketing information and any other information of a similar nature in a form or to the extent not available to the public.

*      *      *

10. Upon termination EMPLOYEE will furnish to the COMPANY satisfactory proof that trade secrets and confidential information of the

8

COMPANY acquired or learned will not be used in any manner should EMPLOYEE become involved in work other than for the COMPANY.

11.  EMPLOYEE acknowledges that all information, data and/or know-how in his possession or control (including, but not limited to, documentation, electronic data, and hard copies of electronic data) and generated and/or developed and/or obtained during the course of or as a result of employment by the COMPANY, as well as materials issued to EMPLOYEE by the COMPANY or on its behalf, are the sole and exclusive property of the COMPANY, and upon termination of employment, EMPLOYEE will immediately return all such property to the COMPANY.

*      *      *

13.  EMPLOYEE understands and acknowledges that breach of any covenants contained herein will result in irreparable damage to the COMPANY and that a court of competent jurisdiction may enjoin EMPLOYEE from violating these covenants and if adjudged to be in violation, either at law or in equity, that EMPLOYEE shall be responsible for all costs associated with enforcement of this agreement including reasonable attorney's fees.

14.  EMPLOYEE understands that this Agreement shall be interpreted and construed under the laws of the Commonwealth of Pennsylvania.

49.     In addition to executing the Confidentiality Agreement, at the beginning of her employment with Teva USA and continuing thereafter, Sandhu received written copies of, training on, and/or was provided ongoing access to Teva USA's policies.

50.     Teva USA's policies that Sandhu had access to, and agreed to abide by as a Teva USA employee, included policies on preservation of confidential information, data privacy, records and document retention, computer system responsibilities, computer security awareness, and the code of business conduct (the "Teva USA Policies").

51.     Sandhu had access to all relevant Teva USA Policies throughout the time of her employment with Teva USA.

52.     The Teva USA Policies that Sandhu was required to adhere to as an active employee mandated her, among other things, to protect Teva USA's trade secrets and other confidential information, refrain from copying and removing any Teva USA documents without prior management approval, keep Teva USA's information secure, and maintain high standards of business ethics.

53.     Beyond Teva USA's policies, Teva USA invests substantial resources in protecting its trade secrets and other confidential information by limiting access to information in a variety of ways, including, but not limited to, only disseminating information to those Teva USA personnel with a need to know the information, limiting electronic access to documents by departments and/or functions, utilizing secure information technology systems with password protection, and by maintaining building security personnel (and secure entrances).

**Conduct at Issue**

54.     In her capacity as a Senior Director at Teva USA, and as a trusted member of Teva USA's Regulatory Affairs department, Sandhu had access to Teva USA's trade secrets and other confidential information, as those terms are defined in her Confidentiality Agreement and under relevant law.

55.     The trade secrets and other confidential information to which Sandhu had access included documents with details on the regulatory status of all of Teva USA's products in development and those on the market, which are highly confidential because they address, among other things, if and when certain products may come to market and/or issues that may affect the current status of any products already on the market.

56.     In the summer of 2016, Teva USA learned through a former Apotex employee that on information and belief Sandhu previously provided Desai (and through Desai, Apotex)

with a copy of highly confidential correspondence from the FDA to Teva USA known as a Complete Response Letter ("CRL").

57.     A CRL is a confidential communication from the FDA by which the FDA provides comments on a drug application for which a drug maker is seeking FDA approval.

58.     The CRL that Teva USA learned Sandhu shared with Desai (and through Desai, Apotex) related to Product X, a generic drug being developed by Teva USA, and contained Teva USA's trade secrets and other confidential information.

59.     In the summer of 2016, Teva USA learned through a former Apotex employee that on information and belief Apotex employees, including Desai, circulated the Product X CRL amongst themselves and had roundtable discussions centered on using the trade secrets and other confidential information in the CRL to advance Apotex's potential market position of its competing generic product.

60.     On information and belief, Desai and Apotex used the information in the CRL to speed the regulatory approval of its competing product.

61.     On information and belief, Desai and Apotex used and continue to use the information in the CRL to advance the market position of its competing product in, among other things, making purchasing decisions and setting production goals that increase Apotex's profits and visibility in the marketplace.

62.     In the summer of 2016, Teva USA learned through a former Apotex employee that on information and belief Sandhu disclosed to Desai (and through Desai, Apotex) Teva USA's confidential corporate information.

63.     In the summer of 2016, Teva USA learned through a former Apotex employee that on information and belief Desai and/or Apotex closely reviewed Teva USA's confidential corporate information and even adopted a similar company structure at Apotex.

64.     Upon learning of the sharing of Teva USA's trade secrets and other confidential information, Teva USA opened an internal investigation into Sandhu, and searched her company-issued laptop and email account as it was permitted to do so under Teva USA Policies.

65.     Teva USA's investigation revealed that Sandhu had engaged in conduct that violated her Confidentiality Agreement, Teva USA Policies, and her common law duties and obligations to Teva USA, including improperly and without authorization sharing Teva USA's trade secrets and other confidential information in a variety of ways to a direct competitor.

66.     Teva USA's investigation revealed that Sandhu had knowingly and without authorization emailed a variety of documents containing trade secrets and other confidential information to Desai at his Apotex email address and to herself at her Gmail account, including but not limited to Teva USA's confidential corporate information.

67.     Teva USA's investigation revealed that that Sandhu created a folder on her Company-issued laptop computer titled "My Drive" that, on information and belief, synced to a Google Drive, which is a cloud-based repository that allowed Sandhu to back-up the files on her company-issued laptop computer to the cloud-based drive that she could access anywhere and share with whomever she chose.

68.     Sandhu's My Drive folder on her company-issued laptop computer contained approximately 900 Teva USA files, including trade secrets and other confidential information.

69.     Sandhu uploaded files into her My Drive folder that contain trade secrets and other confidential information continuously from October 2014 through as late as August 2016.

70.     As an example, on August 8, 2016, Sandhu uploaded an excel spreadsheet containing trade secrets and other confidential information detailing the regulatory status of dozens of pre-approval and post-approval products, and notes on confidential communications with the FDA regarding Teva USA's active drug submissions.

71.     On information and belief, Desai and Apotex accessed Teva USA's trade secrets and confidential information with the intent to use it, and did use it, to further their own competitive products, gain insight into Teva USA's products in development, and improve their competitiveness in the generics market at Teva USA's expense.

72.     On information and belief, Sandhu's installation of the My Drive on her company-issued laptop computer was part of a broader scheme to misappropriate trade secrets and other confidential information from Teva USA's possession without detection in order to pass the trade secrets and other confidential information on to Desai and/or Apotex.

73.     It is against the Teva USA Policies for employees to have a cloud backup on company-issued laptop computers.

74.     Sandhu did not have authorization to install a cloud back-up on her company-issued laptop computer.

75.     Teva USA, as part of its investigation, discovered that Sandhu's company-issued laptop computer recorded that she had used at least ten different USB flash drives during the course of her employment with Teva USA.

76.     Sandhu connected these USB drives throughout 2015 and 2016, with her last recorded use of a USB drive occurring in July 2016.

77.     It is against Teva USA Policies for employees to copy files to external devices, such as USB flash drives.

78.     Sandhu did not have authorization to use the USB flash drives on her company-issued laptop computer.

79.     On information and belief, Sandhu's use of the USB flash drives was part of a broader scheme to misappropriate trade secrets and other confidential information from Teva USA without detection in order to pass the trade secrets and other confidential information on to Desai and/or Apotex.

80.     On information and belief, Sandhu used the USB drives to convey Teva USA trade secrets and other confidential information to Desai and Apotex.

81.     Based on the results of Teva USA's investigation, Teva USA terminated Sandhu's employment on October 11, 2016.

82.     On information and belief, Sandhu's acts in violation of her Confidentiality Agreement and Teva USA Policies were clearly for her own benefit, whether monetary or personal, and to benefit Desai and Apotex.

83.     On information and belief, Desai and/or Apotex were aware that Sandhu was misappropriating Teva USA's trade secrets and other confidential information for the benefit of Desai and/or Apotex.

84.     On information and belief, Apotex, by and through Desai, engaged in efforts to induce Sandhu to improperly disclose Teva USA's trade secrets and other confidential information to Apotex, and actively encouraged Sandhu to breach her Confidentiality Agreement with Teva USA by failing to object to the repeated improper diversion of Teva USA's trade secrets and other confidential information by Sandhu.

85.     On information and belief, Apotex, by and through its CEO and President, Desai, aided, assisted and/or encouraged Sandhu to access and impermissibly obtain Teva USA's trade secrets and other confidential information.

86.     On information and belief, Sandhu has been acting in violation of her express contractual and common law duties and obligations to Teva USA, while using and planning to make further use of Teva USA's trade secrets and other confidential information for her own personal benefit, and/or to the benefit of Desai and Apotex.

## COUNT I

### Violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1832-1839
### (as against all Defendants)

87.     Teva USA repeats and realleges the allegations of Paragraphs 1 through 86 of the Complaint as though fully set forth herein.

88.     As set forth more fully above, Teva USA's trade secrets include, without limitation, confidential communications with the FDA related to Product X, documents concerning Teva USA products in development and post-development, non-public information concerning Teva's business strategies and personnel reorganization, and all such similar information necessary for Teva USA to conduct its business in a competitive market place.

89.     Teva USA's trade secrets relate to products used in, or intended for use in, interstate commerce.

90.     Teva USA's trade secrets are not known outside of the company, and are only disseminated to those Teva USA personnel with a need to know the information.

91.     Teva USA kept its trade secrets from disclosure through all appropriate and necessary means, including requiring Teva USA employees to execute confidentiality

agreements, and providing training on and/or access to all relevant Teva USA Policies and any updates thereto.

92.     Teva USA's trade secrets are not available to the public except through improper means.

93.     Teva USA's trade secrets are highly valuable to Teva USA in that they are essential to Teva USA developing and bringing its products to market, and continuing to service the product market thereafter.

94.     Teva USA's trade secrets are of value to Apotex, a direct competitor to Teva USA, as is clearly demonstrated by the extent to which Defendants engaged in the improper gathering, misappropriation, and transfer of such information from Sandhu to Desai and Apotex.

95.     The goal of Teva USA's information Policies is to prevent improper dissemination (outside of Teva USA) of trade secrets and other confidential information, not generally known or available to the public.

96.     Teva USA's trade secrets that were revealed to Apotex are critical to the success of Teva USA's business in a competitive market place.

97.     Sandhu knew or should have known that Teva USA's trade secrets were to be kept confidential and should not to be disclosed to competitors, customers, and others.

98.     Sandhu knew or should have known that her relationship with Desai, the President and CEO of a direct competitor to Teva USA, created a heightened responsibility on her part to protect against the disclosure to Desai and/or Apotex of any Teva USA's trade secrets and to exercise greater care in protecting all such information from disclosure to Desai and/or Apotex.

99.     Despite her knowledge of the confidentiality of Teva USA's trade secrets and the restrictions upon sharing it, Sandhu without authorization misappropriated and disclosed Teva USA's trade secrets to Desai and Apotex.

100.    Sandhu disclosed Teva USA's trade secrets to Desai and Apotex using instrumentalities of interstate commerce.

101.    Desai and Apotex knew or should have known that the information disclosed to them by Sandhu was Teva USA's trade secrets by virtue of being in the same business as Teva USA and maintaining their own similar information to be trade secrets.

102.    Desai and Apotex, who are in the same industry as Teva USA and understand the confidential nature of certain communications, knew or should have known that Sandhu's sharing of the information was improper and unlawful.

103.    Desai and Apotex knew or should have known that Sandhu did not have Teva USA's consent to share the information.

104.    Despite Desai and Apotex knowing that the information shared with them by Sandhu was Teva USA's trade secrets, Desai and Apotex chose to receive and utilize the misappropriated information and improperly maintains possession over this information to this very day.

105.    On information and belief, Desai and Apotex used Teva USA's trade secrets to increase their competitive advantage in the marketplace and/or increase Apotex's profits.

106.    As further set forth above, Defendants, with the intent to convert Teva USA's trade secrets related to products used in or intended for use in interstate or foreign commerce, to the economic benefit of Defendants and intending or knowing that injury will occur to Teva USA, knowingly and without authorization misappropriated, attempted to misappropriate, and

conspired to misappropriate Teva USA's trade secrets by acquiring them through unlawful means, disclosing and using them in derogation of Teva USA's interests, and continuing to retain possession of them to this day, all in violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1832-1839.

107.   On information and belief, Teva USA's trade secrets have been transferred to and maintained on Defendants' computers and other electronic devices.

108.   On information and belief, Teva USA's trade secrets remain in the possession of Defendants.

109.   On information and belief, Defendants have combined Teva USA's trade secrets into various documents of Apotex, and therefore, Teva USA cannot uncover the full extent of Defendants' theft and misappropriation without a forensic examination of Apotex computers and other electronic devices.

110.   On information and belief, because Defendants continue to use electronic records and documents, including forms and other proprietary information that contain or were derived from Teva USA's trade secrets, Defendants' misappropriation is continuing and ongoing.

111.   Defendants have acted willfully, maliciously, and with reckless disregard to the rights of Teva USA, entitling Teva USA to recovery of exemplary damages and reasonable attorneys' fees.

112.   As a direct and proximate cause of Defendants' wrongful conduct, Defendants have unjustly profited and Teva USA has suffered and will continue to suffer incalculable financial losses, imminent and permanent irreparable harm, loss of the confidentiality of its trade secrets, and other continuing harm and damages in an amount to be determined at trial.

## COUNT II

**Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA")**
**(as against all Defendants)**

113.    Teva USA repeats and realleges the allegations of Paragraphs 1 through 112 of the Complaint as though fully set forth herein.

114.    Teva USA's computers are protected computers for purposes of the CFAA, because they are used in or affect interstate commerce.

115.    At the beginning of Sandhu's employment with Teva USA, she executed and was subject to thereafter a Confidentiality Agreement.

116.    At the beginning of Sandhu's employment with Teva USA (and at all relevant times thereafter) she was provided a copy of, was trained in and/or had access to, and agreed to abide by, Teva USA Policies, which include policies pertaining to data security and maintaining confidentiality of trade secrets and other confidential information.

117.    Sandhu received training and/or communications regarding updates to Teva USA Policies from time to time as necessary throughout her employment with Teva USA.

118.    Teva USA Policies prohibited Sandhu from copying, sharing, disclosing, or retaining any Teva USA trade secrets or other confidential information.

119.    Teva USA Policies prohibited Sandhu from emailing Teva USA trade secrets or confidential information outside of the company.

120.    Teva USA Policies prohibited Sandhu from copying company files to USB drives.

121.    Teva USA Policies prohibited Sandhu from copying company files to cloud-based drives such as Google's My Drive.

122.    Teva USA did not authorize Sandhu to copy Teva USA's trade secrets and other confidential information to USB drives.

123.    Teva USA did not authorize Sandhu to copy Teva USA's trade secrets and other confidential information to a cloud-based drive.

124.    Teva USA did not authorize Sandhu to email Teva USA trade secrets and other confidential information to Desai, Apotex, or anyone else outside of the company.

125.    Teva USA has never authorized Desai or Apotex to access Teva USA's protected computers or any of its trade secrets or other confidential information.

126.    Sandhu, with intent to benefit herself personally and financially, to benefit Apotex and Desai, and to harm Teva USA, violated the CFAA by accessing Teva USA's protected computers and documents in a manner outside her business purposes and exceeding her authorization to do so, knowingly and with intent to defraud copied Teva USA trade secrets and other confidential information from the protected computers into emails, onto USB flash drives, and into a cloud-base drive, and transferring such information to Desai and Apotex, furthering such fraud and obtaining something of value in excess of $5,000 in any one year period.

127.    On information and belief, in violation of the CFAA, Desai and Apotex, acting in concert with and acquiring access through Sandhu's cloud drive and her USB drives, knowingly and with intent to defraud Teva USA, directly and indirectly obtained unauthorized access to Teva USA's protected computers.

128.    By intentionally accessing Teva USA's protected computers without authorization and/or exceeding the scope of their authorized access and obtaining trade secrets and other confidential information from Teva USA's protected computers directly and indirectly, Defendants violated the CFAA.

129.    As a direct and proximate cause of Defendants' unlawful conduct, Teva USA has suffered damages in excess of $5,000.00 for each year in which the conduct has occurred.

130.    As a direct and proximate cause of Defendants' unlawful conduct, Teva USA has suffered and will continue to suffer incalculable financial losses, imminent and permanent irreparable harm, loss of the confidentiality of their trade secrets and other confidential information, and other continuing harm, and other damages in an amount to be determined at trial.

## COUNT III

### Breach of Contract
### (as against Sandhu)

131.    Teva USA repeats and realleges the allegations of Paragraphs 1 through 130 of the Complaint as though fully set forth herein.

132.    At the commencement of Sandhu's employment with Teva USA, she executed the Confidentiality Agreement in return for valuable and sufficient consideration from Teva USA.

133.    Prior to the termination of Sandhu's employment with Teva USA, Sandhu breached the Confidentiality Agreement by, among other things:

(a)    sending Teva USA's trade secrets and other confidential information via her Teva USA email address to Desai and Apotex via Desai's Apotex email address;

(b)    sending Teva USA's trade secrets and other confidential information to herself at her personal email account and, on information and belief, then forwarding those emails to Desai at Apotex;

(c)    copying and transferring to the "My Drive" file on her Teva USA-issued laptop computer that, on information and belief, synced to a Google Drive, approximately 900 files containing trade secrets and other confidential information as defined in the Confidentiality Agreement and, on information and belief, then sharing the cloud-drive with Desai and Apotex;

(d)    copying an unknown number of files from her Teva USA laptop computer to ten different USB flash drives and, on information and belief, then sharing the contents of those flash drives with Desai and/or Apotex; and

(e)    on information and belief, continuing to use and disclose trade secrets and other confidential information obtained in the course of her employment with Teva USA.

134.    As a direct and proximate result of Sandhu's breaches of the Confidentiality Agreement, Teva USA has suffered and will continue to suffer incalculable financial loss, imminent and permanent irreparable harm, and the loss of the confidentiality of its trade secrets and other confidential information, and other damages in an amount to be determined at trial.

135.    As a direct and proximate result of Sandhu's breaches of the Confidentiality Agreement, Teva USA is entitled to an injunction against Sandhu, consistent with Paragraph 13 of the Confidentiality Agreement, enjoining Sandhu from violating the agreement and requiring her to return all trade secrets and other confidential information in her possession to Teva USA, as well as an award of attorneys' fees and costs.

## COUNT IV

### Tortious Interference with the Contractual Relations
### (as against Apotex and Desai)

136.    Teva USA repeats and realleges the allegations of Paragraphs 1 through 135 of the Complaint as though fully set forth herein.

137.    The Confidentiality Agreement is a valid contract between Teva USA and Sandhu.

138.    Such contracts are standard in the pharmaceutical industry for employees, such as Sandhu, who are in Regulatory Affairs positions.

139.    On information and belief, Desai, individually and on behalf of Apotex, has been aware of the existence of the Confidentiality Agreement since the date of Sandhu's employment with Teva USA.

140.    On information and belief, Desai and Apotex, as sophisticated pharmaceutical industry players, knew or should have known that because of Sandhu's position with Teva USA's Regulatory Affairs department, she was subject to a confidentiality agreement, including but not limited to the Confidentiality Agreement at issue here.

141.    On information and belief, Desai and Apotex induced, condoned, and supported Sandhu's misuse and misappropriation of Teva USA's trade secrets and other confidential information in violation of the Confidentiality Agreement and Pennsylvania statutory and common law, and continue to do so particularly by failing to object to its improper diversion.  In doing so, Desai and Apotex have intentionally procured Sandhu's breach of the Confidentiality Agreement.

142.    On information and belief, Desai and Apotex induced Sandhu to breach the Confidentiality Agreement with the intent to harm Teva USA by misappropriating its trade secrets and other confidential information.

143.    As a direct and proximate result of Desai and Apotex's tortious interference with the Confidentiality Agreement, Teva USA will suffer incalculable financial loss, imminent and permanent irreparable harm, and the loss of the confidentiality of its trade secrets and other confidential information, and other damages in an amount to be determined at trial.

## COUNT V

### Breach of Fiduciary Duty
### (as against Sandhu)

144.    Teva USA repeats and realleges the allegations of Paragraphs 1 through 143 of the Complaint as though fully set forth herein.

145.    From June 25, 2012 to October 11, 2016, Sandhu was Teva USA's employee.

146.    During the term of Sandhu's employment by Teva USA she was given important and increasing responsibilities, received a promotion, received a raise in salary, and was given access to trade secrets and other confidential information.

147.    Sandhu's role as a Senior Director required her utmost loyalty given her position of importance within Teva USA.

148.    Teva USA entrusted Sandhu with trade secrets and other confidential information.

149.    Sandhu was obligated to protect Teva USA's trade secrets and other confidential information.

150.    In light of Desai's executive position with Apotex, Sandhu was obligated to take even greater care to protect Teva USA's trade secrets and other confidential information from disclosure to Desai and Apotex.

151.    Sandhu owed Teva USA a fiduciary duty, and was bound to exercise the utmost good faith and loyalty in the performance of her duties.

152.    Rather than comply with her fiduciary duties to Teva USA, Sandhu misappropriated, disclosed, and used Teva USA's trade secrets and other confidential information for her own benefit and the benefit of Desai and Apotex, and in derogation of Teva USA's best interest and applicable company policies.

153.    In taking the actions set forth at length herein, and in conspiring with Desai and Apotex to obtain Teva USA's trade secrets and other confidential information, Sandhu breached her fiduciary duty to Teva USA.

154.    As a direct and proximate result of Sandhu's breach of her fiduciary duties to Teva USA, Teva USA has suffered, is suffering, and will continue to suffer incalculable financial loss, imminent and permanent irreparable harm, loss of the confidentiality of its trade secrets and other confidential information, goodwill, business opportunities, and other damages.

155.    Sandhu was well aware of her duties concerning the protection of trade secrets and other confidential information during and after the term of her employment with Teva USA.

156.    Sandhu's breach of her fiduciary duties was therefore intentional, willful, and malicious.

157.    As a direct and proximate result of Sandhu's breach of her fiduciary duty to Teva USA, Teva USA will suffer incalculable financial loss, imminent and permanent irreparable harm, and the loss of the confidentiality of its trade secrets and other confidential information, and other damages in an amount to be determined at trial.

## COUNT VI

### Aiding and Abetting a Breach of Fiduciary Duty
### (as against Apotex and Desai)

158.    Teva USA repeats and realleges the allegations of Paragraphs 1 through 157 of the Complaint as though fully set forth herein.

159.    As set forth above, Sandhu owed a fiduciary duty to Teva USA.

160.    Desai and Apotex knew of the fiduciary duties Sandhu owed to Teva USA.

161.    Desai and Apotex knew that the information being obtained from Teva USA's computers and other sources contained trade secrets and other confidential information.

162.    On information and belief, Desai and Apotex knowingly assisted and encouraged Sandhu to breach such duties to Teva USA, by, among other things, knowingly, deliberately, dishonestly, and unfairly aided and abetted (and continuing to aid and abet) Sandhu's breaches of fiduciary duty by, among other things, inducing, condoning, encouraging, supporting, and failing to object to Sandhu's misuse and misappropriation of Teva USA's trade secrets and other confidential information in violation of the Confidentiality Agreement and Pennsylvania common law.

163.    On information and belief, Desai and Apotex intentionally and knowingly sought to profit and did profit from Sandhu's breach of her fiduciary duties to Teva USA.

164.    Desai and Apotex have acted willfully, maliciously, and with reckless disregard towards Teva USA's rights.

165.    As a direct and proximate cause of the unlawful conduct of Desai and Apotex, Teva USA has suffered, is suffering, and will continue to suffer incalculable financial losses, imminent and permanent irreparable harm, loss of the confidentiality of its trade secrets and other confidential information, goodwill, business opportunities, and other damages in an amount to be determined at trial.

## COUNT VII

### Violation of Pennsylvania Uniform Trade Secrets Act, 12 P.S. § 5301
### (as against all Defendants)

166.    Teva USA repeats and realleges the allegations of Paragraphs 1 through 165 of the Complaint as though fully set forth herein.

167.    As set forth more fully above, Teva USA's trade secrets include, without limitation, confidential communications with the FDA regarding the approval process for Teva USA products, including the CRL for Product X, details on the submission of Teva products to

the FDA and their status in the approval process, internal discussions of business strategies and personnel reorganization, and other similar information necessary for Teva USA to conduct its business in a competitive market place.

168.    Teva USA's trade secrets present significant business value to Apotex, who is a competitor of Teva USA, as is clearly demonstrated by the extent to which Defendants engaged in the gathering, misappropriation, and transfer of such information to Apotex.

169.    Teva USA's trade secrets derive value by not being disclosed to the public, as such disclosure would give Teva USA's competitor (like Apotex) a competitive advantage in the marketplace for the same generic drugs, thereby harming Teva USA's position in the marketplace.

170.    Teva USA kept its trade secrets from disclosure through all appropriate and necessary means, including subjecting Teva USA employees to confidentiality provisions and policies, including but not limited to the Teva USA Policies, that limit and restrict disclosure of trade secrets and other confidential information to only other Teva USA employees absent express authority.

171.    Sandhu was aware that Teva USA's trade secrets were to be kept confidential and not to be disclosed to competitors, customers, and others, but she deliberately chose to disclose such secrets without authorization for Defendants' benefit, to the detriment of Teva USA.

172.    Desai and Apotex knew or should have known that the information being obtained from Teva USA's computers and other sources was trade secrets, and, nevertheless, they chose to receive and utilize Teva USA's trade secrets, as opposed to objecting to its improper diversion.

173.    On information and belief, Desai and Apotex induced, condoned, intentionally supported, and financially benefitted from Sandhu's misappropriation of Teva USA's trade secrets, constituting misappropriation of Teva USA's trade secrets and other confidential information.

174.    As further set forth above, Defendants misappropriated Teva USA's trade secrets by acquiring them through unlawful means, disclosing and using them in derogation of Teva USA's interest, and continuing to retain possession of them to this day, all in violation of the Pennsylvania Uniform Trade Secrets Act, 12 P.S. § 5301.

175.    Teva USA's trade secrets have been transferred to and, on information and belief, are maintained on Defendants' computers and other electronic devices.

176.    On information and belief, Teva USA's trade secrets remain in the possession of Defendants.

177.    On information and belief, Defendants have utilized Teva USA's trade secrets in compiling various documents for Apotex, and therefore, Teva USA cannot uncover the full extent of Defendants' theft and misappropriation of Teva USA's trade secrets without a forensic examination of Defendants' computers and other electronic devices.

178.    On information and belief, because Defendants continue to use electronic records and documents, including forms and other proprietary information that contain or were derived from Teva USA's trade secrets, Defendants' misappropriation of Teva USA's trade secrets is continuing and ongoing.

179.    Defendants have acted willfully, maliciously, and with reckless disregard to the rights of Teva USA, entitling Teva USA to recovery of exemplary damages and recovery of its reasonable attorneys' fees.

180.     As a direct and proximate cause of Defendants' misappropriation of Teva USA's trade secrets, Teva USA has suffered and will continue to suffer incalculable financial losses, imminent and permanent irreparable harm, loss of the confidentiality of its trade secrets, and other continuing harm and damages in an amount to be determined at trial.

## COUNT VIII

### Unfair Competition
### (as against Apotex)

181.     Teva USA repeats and realleges the allegations of Paragraphs 1 through 180 of the Complaint as though fully set forth herein.

182.     Apotex is a direct competitor of Teva USA in the market for generic drugs.

183.     Apotex obtained Teva USA trade secrets and other confidential information through the improper acts of Teva USA's former employee Sandhu and/or its President and CEO, Desai.

184.     Apotex used Teva USA's trade secrets and other confidential information to further its own interests in competition with Teva USA and to the detriment of Teva USA's interests.

185.     Apotex's misappropriation and misuse of Teva USA's trade secrets and other confidential information constitutes unfair competition.

186.     By tortiously interfering with the Confidentiality Agreement, and aiding and abetting Sandhu's breach of her fiduciary duty to Teva USA, Apotex has unfairly received the benefit of its wrongful exploitation, constituting unfair competition.

187.     As a direct and proximate cause of Apotex's unfair competition, Teva USA has suffered and will continue to suffer incalculable financial losses, imminent and permanent

irreparable harm, loss of the confidentiality of its trade secrets and other confidential information, and other continuing harm and damages in an amount to be determined at trial.

## COUNT IX

### Conversion
### (as against all Defendants)

188.    Teva USA repeats and realleges the allegations of Paragraphs 1 through 187 of the Complaint as though fully set forth herein.

189.    As more fully set forth above, Sandhu unlawfully misappropriated Teva USA's electronic files and emails, containing trade secrets and other confidential information for the purposes of providing them to Desai and Apotex and/or benefitting Defendants.

190.    Teva USA's electronic files and emails are Teva USA's property.

191.    On information and belief, Desai and Apotex took possession of Teva USA's trade secrets and other confidential information and files without Teva USA's consent with the intent that Apotex employees would utilize the trade secrets and other confidential information and files to further develop Defendants' interests.

192.    Defendants unlawfully exercised control over Teva USA's property, and unlawfully retained control over the property and used it for the benefit of Defendants, as opposed to objecting to its improper and unlawful diversion.

193.    Defendants' unlawful conduct was intentional, malicious, willful, and in disregard of Teva USA's rights in its property and in Teva USA's trade secrets and other confidential information.

194.    Teva USA has suffered actual damages as a result of Defendants' unlawful conversion of Teva USA's property, which damages continue to accrue, and cannot yet be calculated with finality.

195.    As a direct and proximate cause of Defendants' unlawful conduct with respect to the conversion of Teva USA's property and Teva USA's trade secrets and other confidential information, Teva USA suffers an ongoing threat of immediate and permanent irreparable harm, which cannot be remedied at law but, rather, must be remedied by the issuance of an injunction against Defendants.

## COUNT X

### Procuring Information by Improper Means
### (as against all Defendants)

196.    Teva USA repeats and realleges the allegations of Paragraphs 1 through 195 of the Complaint as though fully set forth herein.

197.    As further set forth above, Defendants, for the purposes of advancing their own interests, procured by improper means Teva USA's trade secrets and other confidential information and are therefore liable to Teva USA for the harm caused by their possession, disclosure, or use of Teva USA's trade secrets and other confidential information.

198.    Defendants have acted willfully, maliciously, and with reckless disregard towards Teva USA's rights.

199.    As a direct and proximate cause of Defendants' unlawful conduct with respect to procuring Teva USA's trade secrets and other confidential information by improper means, Teva USA has suffered and will continue to suffer incalculable financial losses, imminent and permanent irreparable harm, loss of the confidentiality of its trade secrets and other confidential information, and other continuing harm and damages in an amount to be determined at trial.

## COUNT XI

### Permanent Injunction
### (as against all Defendants)

200.    Teva USA repeats and realleges the allegations of Paragraphs 1 through 199 of the Complaint as though fully set forth herein.

201.    By her conduct as alleged herein, Sandhu delivered trade secrets and other confidential information to Teva USA's competitor, Apotex, through its President and CEO, Desai.

202.    By her conduct alleged herein, Sandhu caused Teva USA monetary harm, reputational harm, and a loss of competitive advantage.

203.    On information and belief, Sandhu, Desai, and Apotex all continue to retain and utilize Teva USA's trade secrets and other confidential information.

204.    On information and belief, Defendants' continued retention of Teva USA's trade secrets and other confidential information will continue to benefit Defendants to the detriment of Teva USA.

205.    If Defendants are not enjoined from their continued possession and use of Teva USA's trade secrets and other confidential information, Teva USA will continue to suffer irreparable harm.

206.    Wherefore, Teva USA demands Sandhu be enjoined from:

a.    violating Paragraph 3 of the Confidentiality Agreement which prohibits Sandhu from disclosing and/or otherwise misappropriating Teva USA's trade secrets and other confidential information;

b.    violating her common law obligations not to disclose and/or otherwise misappropriate Teva USA's trade secrets and other confidential information;

       c.      violating Paragraph 11 of the Confidentiality Agreement which requires Sandhu to return any and all Teva USA property (including, but not limited to, documentation, electronic data, and hard copies of electronic data) she may have in her possession; and,

       d.      destroying and/or altering any of Teva USA's trade secrets and other confidential information, or Teva USA property (including, but not limited to, documentation, electronic data, and hard copies of electronic data), maintained on Sandhu's computer(s) or other personal electronic device(s), in any and all formats, pending the resolution of this matter.

207.    Wherefore, Teva USA demands Apotex, Desai, and Sandhu be enjoined from retaining and using the improperly acquired Teva USA trade secrets and other confidential information.

208.    Wherefore, alternatively, should any of the aforementioned restrictions be found by the Court to be unenforceable, Teva USA would respectfully request the restrictions be modified to the extent necessary to be found enforceable.

WHEREFORE, Teva USA respectfully requests the Court enter judgment against Defendants, and provide Teva USA with the following relief:

       A.      Ordering the return of Teva USA's trade secrets and other confidential information, whether maintained electronically or by hard copy, and the destruction of all copies of such trade secrets and other confidential information in Defendants' possession, and enjoining all future use of Teva USA's trade secrets and other confidential information.

B.    Awarding actual and exemplary damages, and preliminary and permanent injunctive relief, and attorneys' fees against all Defendants for violation of the Defend Trade Secrets Act.

C.    Awarding all compensatory damages, and preliminary and permanent injunctive relief, against all Defendants for violation of the Computer Fraud and Abuse Act.

D.    Awarding actual and punitive damages, costs of enforcement, attorneys' fees, and preliminary and permanent injunctive relief against Sandhu for her breach of the Confidentiality Agreement.

E.    Awarding actual and punitive damages, costs of enforcement, and preliminary and permanent injunctive relief against Desai and Apotex for their tortious interference with the Confidentiality Agreement between Teva USA and Sandhu.

F.    Awarding actual and punitive damages, and preliminary and permanent injunctive relief against Sandhu for her breach of her fiduciary duty to Plaintiff.

G.    Awarding actual and punitive damages, and preliminary and permanent injunctive relief against Desai and Apotex for aiding and abetting Sandhu's breach of her fiduciary duty to Teva USA.

H.    Awarding actual, compensatory, and exemplary damages, and preliminary and permanent injunctive relief against all Defendants for the violation of the Pennsylvania Uniform Trade Secrets Act.

I.    Awarding actual, compensatory, and punitive damages, and preliminary and injunctive relief against Apotex for engaging in unfair competition with Teva USA.

J.     Awarding actual, compensatory, and punitive damages, and preliminary and permanent injunctive relief against all Defendants for conversion of Teva USA's property and Teva USA's protected business information.

K.     Awarding actual, compensatory, and punitive damages, and preliminary and permanent injunctive relief against all Defendants for procuring Teva USA's trade secrets and other confidential information by improper means.

L.     Awarding actual, compensatory, and punitive damages, preliminary and permanent injunctive relief against all Defendants for procuring Teva USA's trade secrets and other confidential information by improper means.

M.     Awarding Teva USA's attorneys' fees, costs and disbursements of this action.

N.     Awarding Teva USA such other and further relief as the Court deems just and proper.

Dated: July 7, 2017
       Philadelphia, Pennsylvania

<div style="margin-left:40%">

Christopher J. Belter
John F. Parker
Paul S. Danner
GOLDBERG SEGALLA LLP
711 3rd Avenue
Suite 1900
New York, New York 10017-4013
Phone: 646-292-8700
Fax: 646-292-8701
Email: cbelter@goldbergsegalla.com
        jparker@goldbergsegalla.com
        pdanner@goldbergsegalla.com

*(Pending Pro Hac Vice Admission)*

</div>

By: _____
Michael A. Schwartz (PA 60234)
PEPPER HAMILTON LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103
Phone:  215-981-4494
Fax:  800-615-2315
Email:  schwartzma@pepperlaw.com

Attorneys for Plaintiff
Teva Pharmaceuticals USA, Inc.