**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TEVA PHARMACEUTICALS USA, INC., | CIVIL ACTION |
| Plaintiff, | NO.  2:17-cv-03031-TJS |
| -vs- | |
| BARINDER SANDHU, JEREMY DESAI, APOTEX INC., and APOTEX CORP., | |
| Defendants. | |

**APOTEX INC.'S AND APOTEX CORPORATION'S MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Abraham C. Reich, Esquire (PA 20060)
Steven K. Ludwig, Esquire (PA 40417)
Brian A. Berkley, Esquire (PA 200821)
Fox Rothschild LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3291
(215) 299-2043/(215) 299-2150 (fax)
areich@foxrothschild.com
sludwig@foxrothschild.com
bberkley@foxrothschild.com

*Counsel for Defendants*
*Apotex Inc. and Apotex Corp.*

Dated:  August 31, 2017

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................ 1

ALLEGED FACTS ......................................................................................................... 2

LEGAL STANDARDS FOR RULE 12(b)(6) MOTION TO DISMISS ....................................... 5

ARGUMENT .................................................................................................................. 6

I.      The DTSA Does Not Apply ............................................................................. 6

II.     Teva Fails To Plead a Trade Secrets Claim Under The DTSA And The PUTSA.............. 9

III.    Teva's CFAA Claim Fails as a Matter of Law ................................................ 13

        A.      Teva Fails To Plead The Proper Loss Under The CFAA ................................... 13

        B.      Apotex Did Not Access Teva's Computers ........................................................ 15

        C.      Teva Fails To Plead A Protected Computer Under The CFAA............................ 18

IV.     PUTSA Preempts Teva's Remaining Tort Claims ......................................... 18

V.      Teva Fails To Plead A Viable Claim Of Tortious Interference Against Apotex............. 20

VI.     Teva Fails To Plead A Viable Claim Of Aiding And Abetting Breach Of Fiduciary
        Duty Against Apotex .............................................................................................. 21

VII.    Teva Fails To Plead A Viable Claim Of Unfair Competition Against Apotex ............... 22

VIII.   Teva Fails To Plead A Viable Claim Of Conversion Against Apotex ........................... 23

IX.     Teva Fails To Plead A Viable Claim Of Procuring Information By Improper Means
        Against Apotex ....................................................................................................... 24

X.      Teva's Separate Claim For Injunctive Relief Should Be Dismissed ................................ 24

CONCLUSION................................................................................................................ 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Fluid Sys., Inc. v. Huber*,
  28 F. Supp. 3d 306 (M.D. Pa. 2014) ...............................................................2, 14

*Advanced Fluid Sys., Inc. v. Huber*,
  No. 13-3087, 2017 WL 2445303 (M.D. Pa. June 6, 2017).....................................22

*Advantage Ambulance Grp., Inc. v. Lugo*,
  No. 08-3300, 2009 WL 839085 (E.D. Pa. Mar. 30, 2009) ......................2, 13, 15, 18

*Allegheny Gen. Hosp. v. Philip Morris, Inc.*,
  228 F.3d 429 (3d Cir. 2000)..............................................................................21, 22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................5, 6

*Austin v. Hill*,
  No. 11-2847, 2014 WL 1386338 (E.D. Pa. Apr. 9, 2014) .....................................21

*AutoTrakk, LLC v. Auto. Leasing Specialists, Inc.*,
  No. 16-01981, 2017 WL 2936730 (M.D. Pa. July 10, 2017) ...............9, 10, 11, 12, 15, 22, 23

*Avago Techs. U.S. Inc. v. Nanoprecision Prod., Inc.*,
  No. 16-3737 JCS, 2017 WL 412524 (N.D. Cal. Jan. 31, 2017) .............................1, 2, 6, 7, 19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................6, 11

*Bioquell, Inc. v. Feinstein*,
  No. 10-2205, 2010 WL 4751709 (E.D. Pa. Nov. 23, 2010) ...........................1, 9, 11

*Brand Energy & Infrastructure Servs., Inc. v. Irex Contracting Grp.*,
  No. 16-2499, 2017 WL 1105648 (E.D. Pa. Mar. 24, 2017) .....................................9

*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*,
  140 F.3d 494 (3d Cir. 1998)................................................................................20

*Byrd v. Aaron's, Inc.*,
  14 F. Supp. 3d 667 (W.D. Pa. 2014).....................................................................22

*Cassetica Software, Inc. v. Computer Sci.. Corp.*,
  No. 09-0003, 2009 WL 1703015 (N.D. Ill. June 18, 2009)....................................14

ii

*Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*,
   No. 15-02177 SI, 2017 WL 1436044 (N.D. Cal. Apr. 24, 2017) ....................................7, 8, 9

*Cenveo Corp. v. Slater*,
   2007 WL 527720 (E.D. Pa. Feb. 12, 2007) ...................................................................19, 20

*Clinton Plumbing & Heating of Trenton, Inc. v. Ciaccio*,
   Civ. No. 09–2751, 2010 WL 4224473 (E.D. Pa. Oct. 22, 2010).....................................14, 15

*Culinary Serv. of Delaware Valley, Inc. v. Borough of Yardley, Pa*,
   385 F. App'x 135 (3d Cir. 2010) ..............................................................................................20

*Dresser-Rand Co. v. Jones*,
   957 F. Supp. 2d 610 (E.D. Pa. 2013) .........................................................................2, 15, 16, 17

*Ellenbogen v. PNC Bank*,
   731 A.2d 175 (Pa. Super. 1999)................................................................................................21

*eToll, Inc. v. Elias/Savion Adver., Inc.*,
   811 A.2d 10 ..............................................................................................................................21

*Factory Market, Inc. v. Schuller Int'l, Inc.*,
   987 F.Supp. 387 (E.D. Pa. 1997) .............................................................................................21

*Fontana v. Corry*,
   No. 10-1685, 2011 WL 4473285 (W.D. Pa. Aug. 30, 2011)..................................................18

*Ginley v. E.B. Mahoney Builders, Inc., Edwin B. Mahoney*,
   No. 04-1986, 2005 WL 27534 (E.D. Pa. Jan. 5, 2005)..........................................................21

*Harris v. O'Connor Truck Sales, Inc.*,
   153 F.Supp.2d 584 (E.D. Pa. 2001) .........................................................................................21

*Hot Stuff Foods, LLC v. Dornbach*,
   726 F. Supp. 2d 1038 (D. Minn. 2010).....................................................................................11

*Hydrogen Master Rights, Ltd. v. Weston*,
   228 F. Supp. 3d 320 (D. Del. 2017)..................................................................................7, 8, 9

*Integrated Waste Sols., Inc. v. Goverdhanam*,
   No. 10-2155, 2010 WL 4910176 (E.D. Pa. Nov. 30, 2010) ....................................................16

*Kappe Assocs., Inc. v. Chesapeake Envtl. Equip., LLC*,
   No. 15-02211 JFL, 2016 WL 1257665 (E.D. Pa. Mar. 31, 2016) ..........................................16

*Kenset Corp. v. Ilanjian*,
   600 F. App'x 827 (3d Cir. 2015) ..............................................................................................24

iii

*Northcraft v. Edward C. Michener Assocs., Inc.*,
    466 A.2d 620 (Pa. Super. 1983)................................................................23

*Pestco, Inc. v. Associated Prod., Inc.*,
    880 A.2d 700 (Pa. Super. 2005)...............................................................24

*Santiago v. Warminster Twp.*,
    629 F.3d 121 (3d Cir. 2010)......................................................................6

*Schutt v. Melmark, Inc.*,
    186 F. Supp. 3d 366 (E.D. Pa. 2016) .......................................................6

*Sensus USA, Inc. v. Elliott Bay Eng'g, Inc.*,
    No.10-1363, 2011 WL 2650028 (W.D. Pa. July 6, 2011) ............................9, 10, 11

*Silvaco Data Sys. v. Intel Corp.*,
    184 Cal. App. 4th 210 (2010) ...............................................................19, 20

*Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*,
    955 F. Supp. 2d 452 (E.D. Pa. 2013) ........................................................24

*Space Data Corp. v. X*,
    No. 16-03260 BLF, 2017 WL 3007078 (N.D. Cal. July 14, 2017) .......................12

*Syngy, Inc. v. ZS Assocs., Inc.*,
    No. 07-3536, 2015 WL 899408 (E.D. Pa. Mar. 3, 2015) ....................................10

**Statutes**

12 Pa.C.S. § 5308(a) ..............................................................................19

12 Pa. C.S. § 5302....................................................................................9, 11

12 Pa. C.S. § 5304....................................................................................9

18 U.S.C. § 1030......................................................................................13, 14, 18

18 U.S.C. § 1836......................................................................................9

18 U.S.C. § 1839......................................................................................9, 11

California Uniform Trade Secrets Act, Cal. Civil Code § 3426, *et seq.*..............19

Defend Trade Secrets Act of 2016, Pub. L. No.  114-153 § 2(e), 130 Stat 376 ............6

**Other Authorities**

Federal Rules of Civil Procedure Rule 12(b)(6) ...........................................5

## INTRODUCTION

Teva, "the world's largest maker of generic pharmaceutical products," brings this Complaint against Apotex Inc. and Apotex Corp. (collectively "Apotex"), a direct competitor in the generic pharmaceutical market, Barinder Sandhu ("Sandhu"), an ex-employee of Teva, and Jeremy Desai ("Desai"), the CEO of Apotex.  The Complaint alleges trade secret misappropriation in violation of the federal and state law, a claim under the Computer Fraud and Abuse Act ("CFAA"), as well as various state contract and tort claims.  While the Complaint contains 208 paragraphs, it is woefully short on actual fact allegations.  Indeed, Teva pleads 60 paragraphs based on nothing more than "information and belief."  As a result, Teva's claims against Apotex should be dismissed.

**First**, Teva's Defense of Trade Secrets Act ("DTSA") claim against Apotex fails to plead any specific act of misappropriation that occurred on or after May 11, 2016.  The DTSA applies only to misappropriation that occurs on or after its enactment, which is May 11, 2016.  Cases interpreting the DTSA require specific allegations of such misappropriation – i.e. when and how it occurred.  *See, e.g. Avago Techs. U.S. Inc. v. Nanoprecision Prod., Inc.*, No. 16-3737 JCS, 2017 WL 412524, at *9 (N.D. Cal. Jan. 31, 2017).  Teva provides none of that detail.  Courts dismiss similarly deficient complaints at the motion to dismiss stage.  *See id.*

**Second**, Teva does not provide sufficient facts concerning the trade secrets at issue.  Other than in conclusory form, it does not identify with particularity its trade secrets, which of those trade secrets Apotex misappropriated, and to what extent and how Apotex is using any of Teva's trade secrets.  Without further facts, Teva's DTSA claim and its Pennsylvania Uniform Trade Secrets Act ("PUTSA") should be dismissed.  *See Bioquell, Inc. v. Feinstein*, No. 10-2205, 2010 WL 4751709, at *6 (E.D. Pa. Nov. 23, 2010).

**Third**, Teva's CFAA claim fails as a matter of law.  To proceed, Teva must sustain a loss

covered under the CFAA, which focuses on the integrity of Teva's computer system.  Courts specifically preclude, at the motion to dismiss stage, CFAA claims that allege only economic loss related to misappropriation of trade secrets and confidential information, but not economic loss tied to disruption in computer service.  *See, e.g., Advanced Fluid Sys., Inc. v. Huber*, 28 F. Supp. 3d 306, 330 (M.D. Pa. 2014).  Teva alleges damages only related to its allegations of trade secret misappropriation.  The CFAA, therefore, is not applicable.  Further, Teva fails to plead a protected computer or unauthorized access consistent with the case law interpreting the CFAA. *See, e.g., Dresser-Rand Co. v. Jones*, 957 F. Supp. 2d 610, 613-14 (E.D. Pa. 2013); *see also Advantage Ambulance Grp., Inc. v. Lugo*, No. 08-3300, 2009 WL 839085, at *2 (E.D. Pa. Mar. 30, 2009).

**Fourth**, PUTSA's preemption provision precludes Teva's remaining state law claims. Teva premises all of those claims on its allegations of trade secret and confidential information misappropriation.  PUTSA, like other state uniform trade secret statutes, specifically preempts such claims.  That holds true even if Teva is unsuccessful in articulating a trade secret at issue. *See Avago Technologies U.S. Inc. v. Nanoprecision Products, Inc.*, 2017 WL 412524 at *1 (N.D. Cal. Jan. 31, 2017).

**Finally**, Teva's remaining state law claims should be dismissed because Teva either (i) does not allege sufficient facts or (ii) the claim is barred as a matter of law.

## ALLEGED FACTS

Sandhu was employed by Teva beginning in June 2012 as Teva's Director, Regulatory Affairs.  Compl. ¶¶ 33-34; 38.  Sandhu was subsequently promoted to Teva's Senior Director, Generics Regulatory Affairs Post-Approval on May 12, 2014.  Compl. ¶ 44.  When she commenced employment, not surprisingly, Sandhu signed a confidentiality agreement which

contained a restriction on disclosing or using "secret or confidential information."  Compl. ¶¶ 34; 48.

In her role as Senior Director, Sandhu had access to "trade secrets and other confidential information."  Compl. ¶ 54.  The Complaint defines the meaning "as those terms are defined in [the] Confidentiality Agreement and under relevant law."  *Id.*[1]  More specifically, as part of her employment with Teva, Sandhu had access to numerous documents containing information on various pharmaceutical products in development, including regulatory status, and other market data.  Compl. ¶ 55.

Sandhu purportedly uploaded around 900 documents to a cloud-based storage account and emailed "a variety of documents" to her personal email account that contained "trade secrets and other confidential information."  Compl. ¶¶ 66-69.  The Complaint only mentions two specific documents.  Teva references a single example of one of the documents uploaded to the cloud – a spreadsheet that was uploaded on August 8, 2016 containing information about the regulatory status of "dozens" of products, in the pre-approval and post-approval stage, as well as notes about confidential communications between Teva and FDA representatives.  Compl. ¶ 70.  Notably, Teva fails  to allege actual delivery of the spreadsheet to Desai or Apotex.   In addition, Teva claims that Sandhu shared with Desai a Complete Response Letter ("CRL") document from the FDA, which includes comments from the FDA in response to an application for approval of a generic drug.  Compl. ¶¶ 56-58.  The Complaint does not allege when or how this was purportedly

---

[1] The agreement specified that "secret or confidential information shall include know-how, designs, formulae, manufacturing, fabrication and technological processes, devices, machines, inventions, research or development projects, plans for future development, materials of a business nature, financial information, client information, sales and marketing information, and any other information of a similar nature in a form or to the extent not available to the public."  Compl. ¶ 48.

3

shared.

In terms of sharing of information, the Complaint generally alleges that Sandhu shared "trade secrets and confidential information about Teva's products in development, including Project X" by sharing them with Desai (and thereby Apotex).  Compl. ¶ 7; 62.  Sandhu allegedly emailed to Desai an unspecified quantity of alleged trade secrets and confidential information on unspecified dates.  Compl. ¶ 10; 66.  While Teva alleges that Sandhu sent emails with confidential information to Desai, it fails to describe the content of the emails, the nature of the alleged trade secrets and confidential information, or the dates on which the emails were sent to Desai.  Compl. ¶ 10; 66.

In addition, the Complaint alleges that Sandhu shared an unspecified quantity of alleged trade secrets and confidential information with Desai using USB drives on unspecified dates. Compl. ¶ 15.  Furthermore, on unspecified dates, Sandhu allegedly shared printed copies of unspecified documents and verbal information with Desai, including the CRL and other documents containing an unspecified quantity of alleged trade secrets and confidential information.  Compl. ¶¶ 16; 18; 56-58.

While Teva defines (albeit in conclusory fashion) the types of trade secrets it has, the Complaint fails to describe the trade secrets and confidential information that Sandhu allegedly provided to Apotex.  *See* Compl. ¶ 88.  In this regard, Teva describes its trade secrets in the following manner:

> Teva's trade secrets include, without limitation, confidential communications with the FDA related to Product X, documents concerning Teva products in development and post-development, non-public information concerning Teva's business strategies and personnel reorganization, and all such similar information necessary for Teva to conduct its business in a competitive marketplace.

*Id.*  Aside from the CRL, the Complaint is devoid of any description of the content allegedly passed

4

by Sandhu to Apotex.  Compl. ¶ 56; 62.  Rather than describe the content of the trade secrets or confidential information, Teva merely asserts the conclusory allegations (on information and belief) that Apotex received "trade secrets and confidential information" *See* Compl. ¶¶ 7; 10; 15; 16; 18; 24; 62; 63; 66; 71; 72; 79; 80; 99; 100; 127; 174; 183; 191; 197.

Moreover, the Complaint is lacking in facts concerning how Apotex purportedly used any trade secrets or other confidential information.  Teva alleges that Apotex "used" and "continues to use" the information gained from Sandhu "to gain a competitive advantage over Teva."  Compl. ¶ 8; 19; 105; 106; 110; 128; 178; 184; 192.  Teva cites a single example (without specifying any time frame) where Apotex employees allegedly discussed unspecified "trade secrets and other confidential information" from the CRL about "Product X," including during a roundtable discussion regarding Apotex's competing product.  Compl. ¶ 20; 59-60.  In addition, Teva claims that Apotex mimicked its company structure.   Compl. ¶ 63.

Teva also makes the conclusory claim that Apotex "engaged in efforts to induce" Sandhu in her alleged disclosure of trade secrets and other confidential information.  Compl. ¶ 24; 84-86; 142.  This charge, however, is not supported by any factual allegations.  Indeed, Teva makes no effort to describe these "efforts" or means of "assistance or encourage[ment]."  Compl. ¶ 84-85.  Instead of supporting this assertion with facts showing any form of active involvement by Apotex in Sandhu's alleged scheme, Teva seemingly supports this allegation only upon the alleged fact that Sandhu and Desai were in a romantic relationship.  Compl. ¶ 5; 42-43.

## LEGAL STANDARDS FOR RULE 12(b)(6) MOTION TO DISMISS

When reviewing motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts use the familiar "plausibility" standard annunciated in *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   Under this standard, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A complaint cannot survive a motion to dismiss when it merely contains "a formulaic recitation of a claim's elements that amounts to mere labels and conclusions." <u>Schutt v. Melmark, Inc.</u>, 186 F. Supp. 3d 366, 372 (E.D. Pa. 2016).   In order to separate factual allegations from labels and conclusions, "courts must take three steps: First, the court must take note of the elements a plaintiff must plead to state a claim.   Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.   Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citations and quotations omitted).

## ARGUMENT

## I.   <u>THE DTSA DOES NOT APPLY</u>

The DTSA does not apply to alleged acts of trade secret misappropriation that occurred before May 11, 2016.   *See* Defend Trade Secrets Act of 2016, Pub. L. No.  114-153 § 2(e), 130 Stat 376 (May 11, 2016) (stating that the DTSA only applies to claims "for which any act occurs on or after the date of the enactment of this Act.").   Courts routinely grant motions to dismiss on this basis.   *See, e.g. Avago Techs. U.S. Inc. v. Nanoprecision Prod., Inc.*, No. 16-3737 JCS, 2017 WL 412524, at *9 (N.D. Cal. Jan. 31, 2017) (granting motion to dismiss "[b]ecause [plaintiff] has

failed to allege any facts showing that acts of misappropriation occurred *after* DTSA came into effect….") (emphasis in original); *Hydrogen Master Rights, Ltd. v. Weston*, 228 F. Supp. 3d 320, 337-38 (D. Del. 2017) (same); *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-02177 SI, 2017 WL 1436044, at *3–5 (N.D. Cal. Apr. 24, 2017) (same).

Teva fails to plead that Apotex engaged in any purported act of trade secret misappropriation on or after May 11, 2016.  Compl. ¶ 7; 10; 56; 59; 60-63; 71; 80.  In fact, in its 208-count complaint, Teva provides no dates on which to evaluate when Apotex purportedly engaged in wrongful conduct, let alone any post-May 11, 2016 conduct.  *Id.*  While Teva notes that it "learned" in "the summer of 2016" about Apotex's alleged wrongdoing, it does not allege that any wrongdoing occurred in 2016.[2]  Compl. ¶ 56.  Without any specific, post-May 11, 2016 allegation against Apotex, Teva cannot proceed with its DTSA claim against Apotex.  *Avago Techs. U.S. Inc.*, 2017 WL 412524, at *9 (granting motion to dismiss where "the confidential information at issue was disclosed … before the DTSA came into effect."); *Hydrogen Master Rights, Ltd.*, 228 F. Supp. 3d at 338 (dismissing "the complaint [because it] does not allege any acts on or after May 11, 2016").

Teva may respond with two arguments, but neither has merit.  First, Teva may argue it does allege post-May 11, 2016 conduct in paragraphs 69 and 70 of the Complaint, whereby it alleges Sandhu uploaded an Excel spreadsheet containing trade secret information on August 8, 2016.  Yet, nowhere in the Complaint does Teva allege anyone from Apotex acquired that spreadsheet.  Instead, in the very next paragraph 71, Teva merely, in conclusory form, alleges "on

---

[2]  While it may not be within the purview of a motion to dismiss, the CRL document about which Teva "learned" in "the summer of 2016" has been produced during preliminary discovery and it is dated in 2015, prior to the enactment of the DTSA.

7

information and belief" that Apotex accessed Teva's trade secrets, but does not specifically allege that included the spreadsheet downloaded on August 8, 2016.  Without such a specific allegation, Teva fails to tie Apotex to the August 8, 2016 spreadsheet.

Teva's second argument may be that it alleges Apotex continued to use Teva's trade secrets after May 11, 2016.  Yet, it does not do so with any particularity, as is required.  In paragraphs 8, 22, 61 and 110 Teva merely asserts, again in conclusory form, that Apotex "continues to use" its trade secrets.  Teva does not identify which trade secret Apotex continues to use, on what dates it has continued to use such trade secrets, or provide any other specific information.

Courts that have considered similar conclusory allegations find them insufficient to state a claim under the DTSA.  For instance, in *Hydrogen Master Rights, Ltd.*, *supra*, the plaintiffs alleged that, in 2012 and on March 23, 2016, defendants had improperly disseminated the technical details of unspecified hydrogen technology.  *Hydrogen Master Rights, Ltd.*, 228 F. Supp. 3d at 326-27.  Plaintiffs further alleged that defendants continued to use the details of the technology after May 11, 2016.  *Id.* at 337-38.  On those allegations, the court held that the "conclusory allegation of continuing use and disclosure" after the enactment of DTSA failed to state a plausible claim.  *Id.* at 338.

Moreover, in *Cave Consulting Grp., Inc.*, *supra*, the court addressed claims of trade secret misappropriation that allegedly occurred in 2014 and continued use by defendants after May 11, 2016.  *Cave Consulting Grp., Inc.,* 2017 WL 1436044, at *5*.  In fact, plaintiff alleged in *Cave* that "on information and belief" defendants were "developing products and modifying existing products to be more competitive with" plaintiff's business.  *Id.*  The court rejected the "continued use" argument:

> This allegation is insufficient to state a claim, as plaintiff makes no specific allegations that defendant used the alleged trade secrets after the DTSA's May 11,

8

2016 enactment. The Court finds that without facts about when post-enactment use occurred and whether the information disclosed was new or somehow different from the prior misappropriation, plaintiff has failed to state a claim under the DTSA.

*Id.*[3]

Here, Teva's allegations of "continued use" are no more than the allegations that were rejected by the courts in *Hydrogen* and *Cave*. Just like in those cases, Teva alleges trade secret misappropriation prior to the enactment of DTSA, which, "on information and belief" has "continued" to the present. Moreover, *Cave* confirms that merely alleging a generic claim of continued use through competition with a trade secrets plaintiff is not sufficient to maintain a claim under the DTSA. Without facts to support the allegations of continued use after May 11, 2016, Teva's DTSA claim must fail.

## II. TEVA FAILS TO PLEAD A TRADE SECRETS CLAIM UNDER THE DTSA AND THE PUTSA[4]

The law requires Teva to plead much more than it has. For instance, Teva must identify the trade secret that requires protection, so that the defendants may be put on notice as to what precisely are the trade secrets at issue. *See Bioquell, Inc. v. Feinstein*, No. 10-2205, 2010 WL 4751709, at *6 (E.D. Pa. Nov. 23, 2010) ); *Sensus USA, Inc. v. Elliott Bay Eng'g, Inc.*, No.10-1363, 2011 WL 2650028, at *6–7 (W.D. Pa. July 6, 2011) (describing the need for trade secrets

---

[3] *But see Brand Energy & Infrastructure Servs., Inc. v. Irex Contracting Grp.*, No. 16-2499, 2017 WL 1105648, at *7 n.8 (E.D. Pa. Mar. 24, 2017) (refusing to dismiss DTSA claim based on continuing use where complaint contained "details regarding who continued to use the trade secrets, what the trade secrets were, and under what circumstances they are continuing to be used" the enactment of DTSA). As discussed, Teva's Complaint fails to detail the trade secrets, how they were used, and how the use continued after May 11, 2016.

[4] The DTSA and PUTSA define trade secrets similarly. *Compare* 18 U.S.C. § 1839(3) *with* 12 Pa. C.S. § 5302; *see also AutoTrakk, LLC v. Auto. Leasing Specialists, Inc.*, No. 16-01981, 2017 WL 2936730, at *3 (M.D. Pa. July 10, 2017) (stating "[f]ederal and Pennsylvania law both define a trade secret" in the same manner). Moreover, both statutes attach liability for similar conduct. *See* 18 U.S.C. § 1836 (prohibiting "misappropriation"); 12 Pa. C.S. § 5304 (prohibiting "misappropriation"); c*ompare* 18 U.S.C. § 1839(5) *with* 12 Pa. C.S. § 5302 (defining "misappropriation" in the same manner). Accordingly, Apotex's arguments apply to both.

9

claim to meet general notice pleading requirements).  Teva cannot simply identify an item as containing a "trade secret" without identifying the actual trade secret.  *See id*. (finding, under Pennsylvania state trade secret law, that plaintiff failed to identify the trade secrets at issue and, instead, used a "string of conclusory statements devoid of any factual basis."); *AutoTrakk, LLC v. Auto. Leasing Specialists, Inc.*, No. 16-01981, 2017 WL 2936730, at *5 (M.D. Pa. July 10, 2017) (dismissing claim where "it is unclear from the amended complaint where the universe of trade secrets begins beyond general business practices or public information …"); *Syngy, Inc. v. ZS Assocs., Inc.*, No. 07-3536, 2015 WL 899408, at *7 (E.D. Pa. Mar. 3, 2015) (faulting plaintiff for taking the "blunderbuss" position that "everything you got from us was a trade secret" without explanation) (quotations omitted).   Further, Teva must identify which of its trade secrets Apotex acquired and explain the facts that show Apotex used Teva's purported trade secrets.  *AutoTrakk, LLC*, 2017 WL 2936730, at *5 (dismissing claim where [plaintiff's] "open-ended style of pleading leaves the questions of which material was misappropriated—and how *precisely* that misappropriation was implemented—entirely up to the reader's imagination.") (emphasis in original).  It fails to do any of this.

        **First**, Teva does not identify what are the actual trade secrets at issue with any particularity. Instead, it merely uses labels and conclusions of "trade secrets," "confidential information," "confidential communications," "documents concerning … products in development and post-development," and "non-public information concerning Teva's business strategies and personnel reorganization," without any explanation of what about this information and documents make them a trade secret.  *See* Compl. ¶¶ 7; 10; 15; 16; 18; 24; 58; 59; 62; 63; 66; 71; 72; 79; 80; 83; 84; 85; 88; 99; 100; 104; 105; 106; 109; 174.  In fact, it does not even identify which product is at issue, calling it only "Product X."  Compl. ¶¶ 58; 88.  Teva must do more than assign mere labels to its

purported information.  Courts dismiss similarly lacking complaints.  *Bioquell, Inc.*, 2010 WL 4751709, at *6; *Sensus USA, Inc.*, 2011 WL 2650028, at *7 (stating that "counterclaim does not provide even a general description of what 'information' or 'information, methods, and techniques' the alleged trade secrets consist of. As *Twombly* and its progeny make clear, a formulaic recitation of the elements of a cause of action will not suffice.")

Teva compounds this failure by not adequately pleading the other requirements necessary for a trade secret claim – i.e. the value of the trade secrets, the reasonable security measures employed to protect the trade secret, and the lack of availability of the trade secrets through proper means.  18 U.S.C. § 1839(3); 12 Pa. C.S. § 5302.  Teva only alleges these requirements generally. *See* Compl. ¶¶ 53; 90-96; 168-170.  For example, the Complaint alleges that Teva "limits electronic access to documents," Compl. ¶ 53, but it does not describe how it limits electronic access to documents containing the specific trade secrets it alleges were misappropriated in this matter. Teva's failures mean its trade secrets claims cannot survive a motion to dismiss.  *AutoTrakk, LLC*, 2017 WL 2936730, at *5 (dismissing claim, in part, because "it is unclear from the amended complaint how exactly [the alleged trade secrets] bestow independent economic value by virtue of their secrecy."); *Hot Stuff Foods, LLC v. Dornbach*, 726 F. Supp. 2d 1038, 1044 (D. Minn. 2010) (granting motion to dismiss because plaintiff failed to plead value of the alleged trade secret and lack of availability through proper means).

**Second**, Teva does not identify the trade secrets that Apotex allegedly acquired.  Almost every allegation concerning Apotex's alleged acquisition of Teva's trade secrets is prefaced by "information and belief."  *See* Compl. ¶¶ 12; 15; 16; 18; 56; 59; 62; 63; 71; 72; 79; 80; 84; 107; 108; 109; 127; 141; 142; 162; 173; 174; 175; 176.  This is surprising, given the months-long internal investigation Teva undertook before referring this matter to the FBI and then bringing this

lawsuit.  Notwithstanding those efforts, it still cannot plead anything more concerning Apotex's involvement other than "on information and belief" for the substantial majority of its allegations. Even where Teva alleges misappropriation without using "information and belief," the allegations still lack any facts identifying the identity of the trade secrets at issue.  *See* Compl. ¶ 7; 10; 66; 99 For example, in paragraphs 10 and 66 Teva alleges that Sandhu emailed documents to Desai using her Teva email address, but fails to identify the nature of the trade secrets even though the alleged disclosures were made through Teva's own computer system.   This method of pleading is not sufficient.  *AutoTrakk, LLC*, 2017 WL 2936730, at *5 (stating that [plaintiff's] "open-ended style of pleading leaves the questions of which material was misappropriated—and how *precisely* that misappropriation was implemented—entirely up to the reader's imagination.") (emphasis in original).

Moreover, Teva only identifies one single document it, "on information and belief," contends Apotex acquired – the CRL relating to "Product X."   Compl. ¶ 56.   Yet, Teva does not identify what, if anything, within that CRL constitutes a trade secret.  Without more, Apotex is not on sufficient notice as to what trade secrets that Teva claims Apotex acquired.

**Finally**, Teva provides no facts demonstrating Apotex has used, or continues to use, Teva's trade secrets.   Teva simply generally alleges that Apotex "used" or "continues to use" the (unknown) trade secrets without describing the means or methods of the alleged "use" with any particularity.   Compl. ¶ 8; 19; 60; 61; 71; 105; 106; 110; 174; 178.   Courts reject similarly conclusory allegations of continued "use."  *Space Data Corp. v. X*, No. 16-03260 BLF, 2017 WL 3007078, at *2 (N.D. Cal. July 14, 2017) (finding the allegation that defendant's "use," without factual allegations regarding the "use," was insufficient under DTSA).

While Teva may argue it meets its burden of "use" when it describes Apotex's alleged

roundtable discussion of the CRL, that argument lacks merit.   At best, those allegations describe use of a specific document, but nowhere does Teva explain what trade secret information within that CRL that Apotex used, and how it used, or could use, such information.  Without specifying the nature of the trade secrets, Teva cannot attempt to claim that they were "used" improperly by Apotex in a way which would constitute a violation of DTSA or PUTSA.[5]  *See id.* at \*2.

## III.    TEVA'S CFAA CLAIM FAILS AS A MATTER OF LAW

While Teva does not cite to a specific CFAA provision, it seems to allege Apotex violated Section 1030(a)(4).  To proceed under this provision, Teva must allege Apotex "knowingly and with intent to defraud, access[ed] a protected computer without authorization, or exceed[ed] authorized access …" 18 U.S.C. § 1030(a)(4).  The "protected computer" must be a computer that is "used in interstate or foreign commerce or communication."  18 U.S.C. § 1030(e)(2)(B). Further, Teva must allege a "loss" recognized by the statute, which does not include "loses" due to alleged trade secret misuse.  *Advantage Ambulance Grp., Inc. v. Lugo*, No. 08-3300, 2009 WL 839085, at \*3-4 (E.D. Pa. Mar. 30, 2009).

Teva's CFAA claim fails as a matter of law because Teva fails to plead:  (1) the type of loss protected under the CFAA; (2) Apotex accessed Teva's computers; and (3) Teva's computers constitute protected computers under the CFAA.

### A.    Teva Fails To Plead The Proper Loss Under The CFAA

CFAA provides for a civil action for allegations of "loss" due to violations of the statute.

---

[5]   In addition, Teva claims that Apotex mimicked its company structure.   Compl. ¶ 63.  Teva, however, fails to (i) explain how a corporate structure amounts to a trade secret or (ii) identify in its Complaint what specific information was shared with Apotex that led to the mimicking of Teva's corporate structure.  Perhaps Teva has not done so as it knows that information about its company structure has been widely reported and disseminated, including by Teva itself.

18 U.S.C. § 1030(g).  In terms of economic loss, the statute only allows for recovery for "loss" over $5,000 due to "interruption in service" of the computer systems or other response or restorative acts taken to correct for violations of the statute.  *Id.* at § 1030(e)(11).  Importantly, "loss" does not include economic costs unrelated to interruptions in service of computer systems. *See, e.g., Advanced Fluid Sys., Inc. v. Huber*, 28 F. Supp. 3d 306, 330 (M.D. Pa. 2014) (stating that "[c]ourts within the Third Circuit have held that to fall within the statutory definition of 'loss,' the alleged loss must be related to the impairment or damage to a computer or computer system."); *Cassetica Software, Inc. v. Computer Sci.. Corp.*, No. 09-0003, 2009 WL 1703015, at *4 (N.D. Ill. June 18, 2009) (noting "courts have uniformly found that economic costs unrelated to computer systems do not fall within the statutory definition of" loss); *Clinton Plumbing & Heating of Trenton, Inc. v. Ciaccio*, Civ. No. 09–2751, 2010 WL 4224473, *6 (E.D. Pa. Oct. 22, 2010) ("Various courts have interpreted 'loss' to mean the remedial costs of investigating a computer for damage, remedying damage done, and costs incurred while the computer is inoperable.").  Courts grant motions to dismiss the entire CFAA claim when the plaintiff only asserts losses unrelated to computer disruption.  *See e.g.*, *Advanced Fluid Sys., Inc.*, 28 F. Supp. 3d at 330 (dismissing claim "for failure to plead damages properly" under CFAA).

In its Complaint, Teva pleads loss over $5,000, but fails to allege the type of loss covered under the CFAA.  Compl. ¶¶ 129-130.  The Complaint is completely devoid of any allegations of "loss," as that term is recognized under CFAA, and this deficiency, on its own, warrants dismissal of the entire CFAA claim.  *Advantage Ambulance Grp., Inc.*, 2009 WL 839085, at *4 (dismissing claim because "Plaintiff completely failed to plead any such damage or loss" recognized under CFAA); *Clinton Plumbing & Heating of Trenton, Inc.*, 2010 WL 4224473, at *7 (dismissing claims where "none of [plaintiff's] claims allege loss *related to computer impairment or*

14

*interruption of service.* This is not the type of loss envisioned by the drafters of the CFAA. Because Plaintiffs do not set forth plausible fact allegations regarding the damage and loss elements of a CFAA claim, this claim … will be dismissed.) (emphasis in original).

In fact, the only damages alleged in the Complaint all generally relate to the alleged theft of trade secrets and confidential information.   Compl. ¶¶ 128; 130.   Courts have specifically acknowledged such damages are not actionable under the CFAA.  *See, e.g., Advantage Ambulance Grp., Inc.*, 2009 WL 839085, at *3–4, 2009 (dismissing claim where complaint only alleged losses due to misappropriation of trade secrets from computer system); *AutoTrakk, LLC*, 2017 WL 2936730, at *8 (same, citing *Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617, 719 (E.D. Pa. 2014); *Clinton Plumbing & Heating of Trenton, Inc.*, 2010 WL 4224473, at *6 (E.D. Pa. Oct. 22, 2010).).  As a result, Teva's CFAA claim should be dismissed, with prejudice.

### B.   Apotex Did Not Access Teva's Computers

The CFAA, originally only a criminal statute, prohibits "unauthorized access" by "electronic trespassers."  *Dresser-Rand Co. v. Jones*, 957 F. Supp. 2d 610, 613-14 (E.D. Pa. 2013). Congress sought to prohibit electronic "breaking and entering" rather than the use of any materials taken from the protected computer systems.  *Id.*  The *Dresser-Rand Co.* Court explained:

> An analogy to burglary provides clarity to the limitations of the CFAA: If a person is invited into someone's home and steals jewelry while inside, the person has committed a crime—but not burglary—because he has not broken into the home. The fact that the person committed a crime while inside the home does not change the fact that he was given permission to enter.

*Id.* at 614 (quotation omitted).  In 1994, CFAA was amended to include a private right of civil action, but the addition of that right did not alter the substantive character of the statute.  *Id.* at 613-14.

Given this legislative purpose, courts within this circuit find that defendants (like Sandhu)

15

who the plaintiff alleges obtained access to information while employed with the plaintiff are not liable under the CFAA. *Dresser-Rand Co.*, 957 F. Supp. 2d at 619–21 (finding no violation of CFAA employees were authorized to access the computer files); *Kappe Assocs., Inc. v. Chesapeake Envtl. Equip., LLC*, No. 15-02211 JFL, 2016 WL 1257665, at *8 (E.D. Pa. Mar. 31, 2016) (same). Courts draw a distinction between unauthorized access and unauthorized use. Employees that have authority to access the plaintiff's computers, but uses the information on those computers in a manner that violates the company's policies, are not liable under the CFAA. *See Dresser-Rand Co.*, 957 F. Supp. 2d at 621 (stating "alleged misuse of the files may have remedies under other laws, but not under the CFAA."); *Kappe Assocs., Inc.*, 2016 WL 1257665, at *8) (same); *see also Integrated Waste Sols., Inc. v. Goverdhanam*, No. 10-2155, 2010 WL 4910176, at *8 (E.D. Pa. Nov. 30, 2010) (dismissing allegations of "misuse of information to which [Defendants] had access via [a] Confidentiality Agreement" because "such behavior does not indicate lack of authorization.") Just as with the example of breaking and entering, the jewelry thief who was invited into the home may be liable for theft but not burglary; likewise, the employee who allegedly steals confidential information while exercising her authority to access the company's computers may be liable for theft of trade secrets but not under the CFAA.

According to the Complaint, Teva does not allege that Sandhu lacked authorization to access the documents at issue in this case. For example, in paragraphs 122, 123 and 124, Teva alleges that Sandhu was not authorized to copy or email certain documents, but, in contrast to the other defendants (Compl. ¶ 125), nowhere does Teva allege she did not have proper access to the computers. The allegations of improper conduct all relate to the <u>use</u> of its information, not the accessing of that information. Compl. ¶¶ 118-124. Like the defendant-employees in *Dresser-Rand Co.*, Sandhu cannot be liable for a violation of CFAA.

Given Sandhu is not liable, it is even more attenuated to conclude Apotex could be liable. There is no allegation that Apotex accessed any Teva computer.  Instead, Teva alleges only "on information and belief" that Desai and Apotex "act[ed] in concert with" Sandhu and "acquir[ed] access through Sandhu's cloud drive and her USB drives…."  Compl. ¶ 127.  This paragraph, which is the only paragraph directed at Apotex, alleges that Apotex acquired access through Sandhu's cloud drive and USB drives[6], but does not allege that Apotex directed or controlled Sandhu when she allegedly accessed the files (with authorization).  Despite what the paragraph seems to imply, it lacks any allegations that Apotex ever accessed Teva's computer systems in any way whatsoever.

Under the plain language of the statute and relevant case law, these allegations are not sufficient.  Judge Brody's decision in *Dresser-Rand* is instructive.  Building off of the statute's purpose in prohibiting electronic trespassing, Judge Brody found that third parties could not be liable for "accessing" computer systems where the employees who accessed the files did so with authorization.  *Dresser-Rand Co.*, 957 F. Supp. 2d at 615.  The holding is worth quoting at length:

> Whatever happens to the data subsequent to being taken from the computers subsequently is not encompassed in the purview of the CFAA. Dresser–Rand's CFAA claim against [third party] fails to meet the basic requirement of accessing a computer. Dresser–Rand does not allege in its Complaint that [third party] had any interaction with its computers, computer systems, or network—only that [third party] viewed and edited Dresser–Rand documents on his own computer that he received via e-mail attachments from [Dresser-Rand employees]. Wadsworth may have accessed Dresser–Rand documents, but he never accessed Dresser–Rand computers, as required under the CFAA.

*Id.*  In this case, Apotex is in the same position as the defendants in *Dresser-Rand* who did not

---

[6] As this Court knows, Teva admitted at the Rule 16 Conference that Teva lacks any evidence that Apotex ever accessed files from Sandhu's cloud drive or USB drives.

access any files, and allegedly obtained them from someone who had authorization to access them. Just like in that case, the Court should dismiss the CFAA claim against Apotex.

### C.      Teva Fails To Plead A Protected Computer Under The CFAA

CFAA only applies to "protected computers," which are defined as computers "used in or affecting interstate or foreign commerce or communication."  18 U.S.C. § 1030(e)(2)(B).  To bring a claim under CFAA, a plaintiff must allege facts to support the allegation that the computer which was improperly accessed was used in interstate commerce.  *Lugo*, 2009 WL 839085, at *2 (finding allegation that "the computer so accessed was used in interstate commerce" was a "mere reiteration of the elements of a claim—without more—[which] is insufficient to survive a 12(b)(6) motion to dismiss."); *see also Fontana v. Corry*, No. 10-1685, 2011 WL 4473285, at *6–7 (W.D. Pa. Aug. 30, 2011), *report and recommendation adopted,* No. 10-1685, 2011 WL 4461313 (W.D. Pa. Sept. 26, 2011) (same).

In the Complaint, Teva attempts to plead the same type of threadbare allegation that was rejected in *Lugo*.  Compl. ¶ 114 ("Teva USA's computer and protected computers for the purposes of CFAA, because they are used in or affect interstate commerce.").  Teva provides no factual support for this allegation, which is necessary to bring a CFAA claim.  As such, the CFAA claim should be dismissed on this basis alone.

## IV.    PUTSA PREEMPTS TEVA'S REMAINING TORT CLAIMS

Teva bases its remaining tort claims on the same alleged misconduct – that the Defendants allegedly misappropriated Teva's trade secrets and confidential information.  *See* Compl. at ¶ 162; 185; 191-92; 197.  PUTSA, like other states' uniform trade secrets acts, preempts "conflicting tort . . . law of this Commonwealth providing civil remedies for misappropriation of a trade secret."

12 Pa. C.S. § 5308(a).   Accordingly, Teva's torts claims, to the extent they rely on Teva's allegations of misappropriation of trade secrets, should be dismissed.

Teva may respond that dismissal is inappropriate because it also alleges misappropriation of confidential information, which would not be actionable under PUTSA but would otherwise implicate tort liability.   While certain other district courts have reached this conclusion, there is no binding precedent here to support Teva's position.   *See*, *e.g*, *Cenveo Corp. v. Slater*, 2007 WL 527720 at *3-*4 (E.D. Pa. Feb. 12, 2007).   Further, more recent court opinions have criticized Teva's anticipated argument.   These courts note that dismissal of the conflicting tort claims better serves the underlining purpose of the uniform system the states sought to create when adopting the uniform trade secrets act.   *See*, *e.g.*, *Avago Technologies U.S. Inc. v. Nanoprecision Products, Inc.*, 2017 WL 412524 at *5-*6 (N.D. Cal. Jan. 31, 2017); *see also Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010).

For instance, on January 31, 2017, in *Avago Technologies U.S. Inc. v. Nanoprecision Products, Inc*., a district court considered this precise issue in the context of the California Uniform Trade Secrets Act (Cal. Civil Code § 3426, *et seq.*), which has a preemption provision identical to PUTSA.   2017 WL 412524 at *5-6.   There, the *Avago* Court rejected Teva's anticipated argument. In doing so, the court adopted a rationale that applies to all uniform trade secrets act, including Pennsylvania's.   In that regard, the *Avago* Court found persuasive the following holding from another case:

> We emphatically reject the *Cenveo* court's suggestion that the uniform act was not intended to preempt 'common law conversion claims based on the taking of information that, though not a trade secret, was nonetheless of value to the claimant.' . . .   On the contrary, a prime purpose of the law was to sweep away the adopting states' bewildering web of rules and rationales and replace it with a uniform set of principles for determining when one is – and is not – liable for acquiring, disclosing, or using 'information . . . of value . . . Central to the effort was the act's definition of a trade secret . . .

19

> . Information that does not fit this definition, and is not otherwise made property by some provision of positive law, belongs to no one, and cannot be converted or stolen.  By permitting the conversion claim to proceed on a contrary rationale, the *Cenveo* court impliedly created a new category of intellectual property far beyond the contemplation of the Act, subsuming its definition of "trade secret" and effectively obliterating the uniform system it seeks to generate.

*Id*. at *6 (citing *Silvaco Data Sys.*, 184 Cal. App. 4th at 236).

Accordingly, the court focused on whether the common law claims were "based on the same nucleus of facts as the misappropriation of trade secrets claim for relief."  *Id*.  They were, and so the court granted defendant's motion to dismiss based on the uniform trade secret act's preemption provision.  *See id*.

The same result should be reached here.  All of Teva's tort claims stem from the same conduct as its PUTSA claim.  Accordingly, PUTSA preempts those claims.

## V.   TEVA FAILS TO PLEAD A VIABLE CLAIM OF TORTIOUS INTERFERENCE AGAINST APOTEX.

Among the elements of tortious interference under Pennsylvania law, Teva must plead "purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent the prospective relation from occurring."  *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 530 (3d Cir. 1998).

The Complaint is devoid of any facts indicating Apotex took purposeful action specifically intended to harm Teva.  Teva only alleges, in conclusory fashion, that Desai, acting as Apotex's CEO, "induc[ed], condon[ed], [or] support[ed]" Sandhu related to her alleged misappropriation of trade secrets.  Compl. ¶ 141.  Moreover, the conclusory allegations directed toward Apotex are supported only by information and belief, which is a telltale sign that Teva does not actually have any facts to support this charge.  Without any factual allegations, this is insufficient to meet the plausibility standard. C*ulinary Serv. of Delaware Valley, Inc. v. Borough of Yardley, Pa*, 385 F.

20

App'x 135, 143 (3d Cir. 2010) (finding "bare assertions" of elements of tortious interference claim, without supporting facts, were insufficient).

## VI.   TEVA FAILS TO PLEAD A VIABLE CLAIM OF AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AGAINST APOTEX

To succeed on its aiding and abetting claim against Apotex, Teva must allege a viable underlying claim against Sandhu for breach of her fiduciary duty. *See, e.g., Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 446 (3d Cir. 2000); *Austin v. Hill*, No. 11-2847, 2014 WL 1386338, at *13 (E.D. Pa. Apr. 9, 2014) (citing Restatement (Second) of Torts § 876), *aff'd sub nom. Austin v. Cty. of Northampton*, 630 F. App'x 163 (3d Cir. 2015). Teva has failed to do that.

The gist of the action and economic loss doctrines bar Teva's underlying fiduciary duty claim against Sandhu. The "gist of the action" doctrine precludes tort claims based on contractual obligations. *See eToll, Inc. v. Elias/Savion Adver., Inc.,* 811 A.2d 10, 14; 21 (Pa. Super. Ct. 2002); *Ginley v. E.B. Mahoney Builders, Inc., Edwin B. Mahoney*, No. 04-1986, 2005 WL 27534, at *3 (E.D. Pa. Jan. 5, 2005) (dismissing breach of fiduciary duty claim based on the gist of the action doctrine). In addition, the "economic loss" doctrine precludes recovery of economic losses suffered as a result of tortious conduct, unless there is "physical harm to a plaintiff or his property." *Ellenbogen v. PNC Bank*, 731 A.2d 175, 188 n.26 (Pa. Super. 1999)(citations omitted); *see also Harris v. O'Connor Truck Sales, Inc.*, 153 F.Supp.2d 584, 588 (E.D. Pa. 2001)(same). The rationale underlying the economic loss doctrine "is that tort law is not intended to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement." *Factory Market, Inc. v. Schuller Int'l, Inc.*, 987 F.Supp. 387, 395-96 (E.D. Pa. 1997).

Here, Teva premises its fiduciary duty claim against Sandhu on the conduct that forms the alleged breach of her confidentiality agreement. Compl. ¶ 153. Thus, the gist of the action doctrine bars the fiduciary duty claim. Further, Teva claims broad based economic loss suffered by the

21

alleged tortious acts of Apotex related to the confidentiality agreement between it and Sandhu. Compl. ¶ 165.  Accordingly, the economic loss doctrine similarly bars the fiduciary duty claim against Sandhu.

It must follow that, if Teva has no viable claim for breach of fiduciary duty, then it has no plausible claim against Apotex for aiding and abetting a non-existent breach.  Courts dismiss aiding and abetting claims where the underlying claim has been dismissed.  *See, e.g., Allegheny Gen. Hosp.*, 228 F.3d at 446 (upholding dismissal of aiding and abetting claim for lack of underlying claim); *Byrd v. Aaron's, Inc.*, 14 F. Supp. 3d 667, 693 (W.D. Pa. 2014) ("Plaintiffs' claims of civil conspiracy and aiding and abetting are derivative of the underlying claims.  Because Plaintiffs have failed to state a claim for the invasion of privacy, the civil conspiracy and aiding and abetting claims based on this tort cannot proceed.").  The same should hold here.

Separately, Teva fails to meet another element, which requires Teva to allege facts showing Apotex rendered **substantial** assistance or encouragement to harm Teva.  *See Advanced Fluid Sys., Inc. v. Huber*, No. 13-3087, 2017 WL 2445303, at *18 (M.D. Pa. June 6, 2017).  In fact, Teva only pleads boilerplate allegations of "inducement," without any factual support, and based only on information and belief.  Compl. ¶ 162.  This is insufficient to meet the plausibility standard.

## VII.   TEVA FAILS TO PLEAD A VIABLE CLAIM OF UNFAIR COMPETITION AGAINST APOTEX

Teva bases its unfair competition claim on Apotex's alleged misappropriation of Teva's trade secrets.  Compl. ¶ 191.  To succeed on that basis, Teva must allege "substantial interference" with its business "in a way that had tangible market impact."  *AutoTrakk, LLC*, 2017 WL 2936730, at *14–15 (dismissing unfair competition claim based on trade secrets misappropriation).

Teva fails to meet its pleading burden.  It only perfunctorily alleges Apotex "used" Teva's "trade secrets and confidential information … to further their own competitive products …."

22

Compl. ¶ 71. These allegations are nothing more than conclusions, without factual support. There are no allegations of tangible market impact, or substantial interference. Without more, its claim of unfair competition should be dismissed. *See id.* at \*14–15.

## VIII.   TEVA FAILS TO PLEAD A VIABLE CLAIM OF CONVERSION AGAINST APOTEX

In Pennsylvania, "conversion is the deprivation of another's right of property in, or use and possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *Northcraft v. Edward C. Michener Assocs., Inc.*, 466 A.2d 620, 624–25 (Pa. Super. 1983). The property rights protected by the tort of conversion include intangible property "which are customarily merged in, or identified with some document." *Id.* at 625; *see also AutoTrakk, LLC*, 2017 WL 2936730, at \*11–12.

As noted above with regard to the trade secrets claims, the Complaint fails to sufficiently allege factual allegations of "use" of the alleged trade secrets and confidential information to bring claims of unlawful use under federal and state trade secrets law. The same argument applies to the claim for "use" of the information in the context of a conversion claim. As such, the conversion claim premised upon the "use" of the information must fail.

Moreover, with the exception of the CRL document, which was purportedly shared at an unidentified time, Teva fails to allege that any particular information "merged in, identified with [a] document" that is in the possession of Apotex. Just as with the trade secrets prong of "acquired," Teva failed to allege sufficient facts to survive a motion to dismiss for the "possession" prong of its conversion claim.

23

IX.   **TEVA FAILS TO PLEAD A VIABLE CLAIM OF PROCURING INFORMATION BY IMPROPER MEANS AGAINST APOTEX**

The tort of procuring information by improper means prohibits the following conduct: "[o]ne who, for the purpose of advancing a rival business interest, procures by improper means information about another's business is liable to the other for the harm caused by his possession, disclosure or use of the information." *Pestco, Inc. v. Associated Prod., Inc.*, 880 A.2d 700, 708–09 (Pa. Super. 2005) (citing Restatement of Torts § 759).   This tort, also called "conversion of business information," is actionable "where another acquires confidential business information (trade secrets or other non-public information) through misconduct." *Kenset Corp. v. Ilanjian*, 600 F. App'x 827, 832 (3d Cir. 2015) (citing *Pierre & Carlo, Inc. v. Premier Salons, Inc.*, 713 F. Supp. 2d 471, 481 (E.D. Pa. 2010).)

As with the other tort claims and the trade secrets claims, Teva fails to allege sufficient factual allegations necessary to survive a motion to dismiss.

X.   **TEVA'S SEPARATE CLAIM FOR INJUNCTIVE RELIEF SHOULD BE DISMISSED**

"A request for injunctive relief by itself does not state a cause of action . . . An injunction is a remedy, not a separate claim or cause of action.  A pleading can . . . request injunctive relief in connection with a substantive claim, but a separately pled claim or cause of action for injunctive relief is inappropriate." *Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*, 955 F. Supp. 2d 452, 465 (E.D. Pa. 2013) (quoting *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010)). Therefore, the separate claim for injunctive relief should be dismissed.  Compl. ¶¶ 200-208 (Count XI – Permanent Injunction).

24

**CONCLUSION**

Teva's Complaint and its 60 paragraphs based on "information and belief" lacks sufficient

facts to withstand scrutiny and all claims against Apotex should be dismissed.

<div style="margin-left:40%;">

Respectfully submitted,

*/s/ Abraham C. Reich*
Abraham C. Reich, Esquire (PA 20060)
Steven K. Ludwig, Esquire (PA 40417)
Brian A. Berkley, Esquire (PA 200821)
Fox Rothschild LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3291
(215) 299-2043/(215) 299-2150 (fax)
areich@foxrothschild.com
sludwig@foxrothschild.com
bberkley@foxrothschild.com

*Counsel for Defendants*
*Apotex Inc. and Apotex Corp.*

</div>

Dated:  August 31, 2017

25