# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TEVA PHARMACEUTICALS USA, INC., | CIVIL ACTION |
| Plaintiff, | NO. 2:17-cv-03031-TJS |
| -vs- | |
| BARINDER SANDHU, JEREMY DESAI, APOTEX INC., and APOTEX CORP., | |
| Defendants. | |

## [PROPOSED] ORDER

**AND NOW**, this ____ day of _____, 2017, upon consideration of Defendants Apotex Inc. and Apotex Corp.'s (together, "Apotex") Rule 12(b)(6) Motion to Dismiss and supporting memorandum of law, all responses and replies therefore, and arguments of counsel, if any, it is hereby **ORDERED** that Apotex's Motion to Dismiss is **DENIED**.

BY THE COURT:

_____

HON. TIMOTHY J. SAVAGE, U.S.D.C.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TEVA PHARMACEUTICALS USA, INC., | CIVIL ACTION |
| Plaintiff, | NO. 2:17-cv-03031-TJS |
| -vs- | |
| BARINDER SANDHU, JEREMY DESAI, APOTEX INC., and APOTEX CORP., | |
| Defendants. | |

**PLAINTIFF TEVA PHARMACEUTICALS USA, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO THE RULE 12(b)(6) MOTION TO DISMISS BY DEFENDANTS APOTEX INC. AND APOTEX CORP.**

Paul S. Danner, Esq.
Matthew S. Trokenheim, Esq.
GOLDBERG SEGALLA LLP
711 3rd Avenue, Suite 1900
New York, New York 10017-4013
Phone: 646-292-8700
Fax: 646-292-8701
Email: pdanner@goldbergsegalla.com
       mtrokenheim@goldbergsegalla.com
       (Admitted *pro hac vice*)

Michael A. Schwartz, Esq. (PA 60234)
Eric S. Merin, Esq. (PA 320857)
PEPPER HAMILTON LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103
Phone: 215-981-4494
Fax: 800-615-2315
Email: schwartzma@pepperlaw.com
       merine@pepperlaw.com
*Attorneys for Plaintiff*
*Teva Pharmaceuticals USA, Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

RELEVANT FACTUAL BACKGROUND ............................................................3

    A.  Teva USA Learns of Defendants' Misappropriation ................................3

    B.  Defendants' Scheme to Steal Teva USA's Trade Secrets and Other
        Confidential Information ...........................................................................5

    C.  Apotex's Improper Use of Teva USA's Trade Secrets and Other
        Confidential Information ...........................................................................7

LEGAL STANDARD .............................................................................................8

ARGUMENT ...........................................................................................................9

I.    DTSA APPLIES BECAUSE APOTEX MISAPPROPRIATED AND
      USED TRADE SECRETS AFTER ENACTMENT OF THE STATUTE........................9

II.   TEVA USA STATES A TRADE SECRETS CLAIM UNDER DTSA
      AND PUTSA ...................................................................................................12

III.  TEVA USA PROPERLY STATES A CLAIM UNDER CFAA....................................15

    A.  Teva USA Pleads a Compensable Loss under CFAA in the Form of
        Expenditures on its Investigation ...........................................................15

    B.  Apotex Accessed Teva USA Computers When Its CEO Directed
        Sandhu to Give Him Access to the Cloud Drive, Email him
        Documents, and Provide Documents on USB Drives ..............................16

    C.  Teva USA Pleads Access to a Protected Computer ................................17

IV.  TEVA USA'S TORT CLAIMS ARE NOT PREEMPTED BY PUTSA........................18

V.   APOTEX TORTIOUSLY INTERFERED WITH TEVA USA'S
      CONFIDENTIALITY AGREEMENT WITH SANDHU...............................................19

VI.  APOTEX AIDED AND ABETTED SANDHU'S BREACH OF HER
      FIDUCIARY DUTY TO TEVA USA ..........................................................................21

    A.  Teva USA's Claim Against Apotex is Independent of its Claim
        Against Sandhu ........................................................................................21

B. Teva USA Pleads Apotex's and Desai's Substantial Assistance to Sandhu in Her Breach of Fiduciary Duty to Teva USA ...........................................23

VII. APOTEX ENGAGED IN UNFAIR COMPETITION ...................................................23

VIII.APOTEX ENGAGED IN CONVERSION ...................................................................24

IX. APOTEX PROCURED INFORMATION BY IMPROPER MEANS ...........................26

CONCLUSION.........................................................................................................................27

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Adams Arms, LLC v. Unified Weapon Sys., Inc.*,
  16–cv–1503, 2016 WL 5391394 (M.D. Fla. Sept. 27, 2016) ...............................................10

*Advanced Fluid Sys., Inc. v. Huber*,
  28 F. Supp. 3d 306 (M.D. Pa. 2014) .................................................................................17

*Agilysys, Inc. v. Hall*,
  1:16-CV-3557-ELR, 2017 WL 2903364 (N.D. Ga. May 25, 2017) .....................................10

*Alpha Pro Tech, Inc. v. VWR Int'l LLC*,
  984 F. Supp. 2d 425 (E.D. Pa. 2013)............................................................................2, 12

*Am. Hearing Aid Assocs., Inc. v. GN Resound N. Am.*,
  309 F. Supp. 2d 694 (E.D. Pa. 2004)..................................................................................25

*Aquent LLC v. Stapleton*,
  65 F.Supp.3d 1339 (M.D. Fl. 2014) ...................................................................................15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................... 1, 8, 9, 19

*AutoTrakk, LLC v. Auto. Leasing Specialists, Inc.*,
  No. 4:16-CV-01981, 2017 WL 2936730 (M.D. Pa. July 10, 2017).....................................24

*Avago Technologies U.S. Inc. v. Nanoprecision Prods., Inc.*,
  2017 WL 412524 (N.D. Cal. Jan. 31 2017)................................................................. 11, 19

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................... 1, 8, 9, 19

*Binary Semantics, Ltd. v. Minitab, Inc.*,
  No. Civ.A.07–1750, 2008 WL 763575 (M.D. Pa. Mar. 20, 2008) .......................................17

*Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*,
  247 F.3d 79 (3d Cir. 2001) ........................................................................................21, 22

*Brand Energy & Infrastructure Services, Inc. v. Irex Contr. Group*,
  CV 16-2499, 2017 WL 1105648 (E.D. Pa. Mar. 24, 2017) ................................. 2, 10, 11, 17

*Bucci v. Wachovia Bank, N.A.*,
  No. CIV.A. 08-1478, 2009 WL 1740503 (E.D. Pa. June 17, 2009) .....................................23

*Carnegie Strategic Design Engineers, LLC v. Cloherty*
    No. CIV.A. 13-1112, 2014 WL 896636 (W.D. Pa. Mar. 6, 2014)..................................15, 16

*Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*,
    No. 15-02177 SI, 2017 WL 1436044 (N.D. Cal. Apr. 24, 2017) ..........................................11

*Cenveo Corp. v. Slater*,
    No. CIV A 06-CV-2632, 2007 WL 527720 (E.D. Pa. Feb. 12, 2007)..................................18

*Certainteed Ceilings Corp. v. Aiken*,
    No. CIV.A. 14-3925, 2015 WL 410029 (E.D. Pa. Jan. 29, 2015) ....................................9, 15

*Chubb Ina Holdings Inc. v. Chang*,
    CV 16-2354-BRM-DEA, 2017 WL 499682 (D.N.J. Feb. 7, 2017).......................................12

*Council for Educ. Travel, USA v. Czopek*,
    No. 1:11-CV-00672, 2011 WL 3882474 (M.D. Pa. Sept. 2, 2011) ......................................14

*Culinary Serv. of Delaware Valley, Inc. v. Borough of Yardley, Pa*
    385 F. App'x 135 (3d Cir. 2010) ........................................................................................20

*Estes Forwarding Worldwide LLC v. Cuellar*,
    239 F. Supp. 3d 918 (E.D. Va. 2017).................................................................................17

*Grow Fin. Fed. Credit Union v. GTE Fed. Credit Union*,
    8:17-CV-1239-T-30JSS, 2017 WL 3492707 (M.D. Fla. Aug. 15, 2017) .............................12

*First Am. Marketing Corp. v. Canella*,
    2004 WL 250537 (E.D. Pa. Jan. 26, 2004)..........................................................................12

*Hecht v. BabyAge.com, Inc.*,
    No. 3:10–CV–724, 2010 WL 3940882 (M.D. Pa. Oct.6, 2010)...........................................18

*Hill v. Best Med. Int'l, Inc.*,
    No. 07-1709, 2011 WL 5082208 (W.D. Pa. Oct. 25, 2011).................................................25

*IDT Corp. v. Unlimited Recharge, Inc.*,
    No. CIV.A. 11-4992 ES, 2012 WL 4050298 (D.N.J. Sept. 13, 2012)..................................14

*Kimberton Healthcare Consulting, Inc. v. Primary PhysicianCare, Inc.*,
    No. CIV.A. 11-4568, 2011 WL 6046923 (E.D. Pa. Dec. 6, 2011) .................................18, 22

*Leonard A. Feinberg, Inc. v. Cent. Asia Capital Corp., Ltd.*,
    974 F. Supp. 822 (E.D. Pa. 1997) ......................................................................................25

*Matlack Leasing LLC v. Morison Cogen, LLP*,
    No. 09-cv-1570, 2010 WL 114883 (E.D. Pa. 2010) ...........................................................23

*McDermott v. Clondalkin Grp.*,
  649 F. App'x 263 (3d Cir. 2016) ................................................................................ 9, 12

*Meyer v. Holley*,
  537 U.S. 280 (2003) ................................................................................................... 20

*N. Am. Commc'ns, Inc. v. Sessa*,
  No. CIV.A. 3:14-227, 2015 WL 5714514 (W.D. Pa. Sept. 29, 2015) ........................... 18, 19

*Neopart Transit, LLC v. Mgmt. Consulting, Inc.*,
  No. CV 16-3103, 2017 WL 714043 (E.D. Pa. Feb. 23, 2017) ........................................ 25

*Pennfield Precision, Inc. v. EF Precision, Inc.*,
  No. CIV.A. 00-280, 2000 WL 1201381 (E.D. Pa. Aug. 15, 2000) .................................. 13

*Personalized Brokerage Servs., LLC v. Lucius*,
  No. CIV. 05-1663 ....................................................................................................... 16

*Pestco, Inc. v. Associated Prods., Inc.*,
  880 A.2d 700 (Pa. Super. Ct. 2005) ............................................................................ 26

*Phillips v. Cty. of Allegheny*,
  515 F.3d 224 (3d Cir. 2008) .......................................................................................... 9

*Silvaco Data Sys. v. Intel Corp.*,
  184 Cal. App 4th 210 (2010) ....................................................................................... 19

*Simmonds Equp., LLC v. GGR Int'l, Inc.*,
  126 F. Supp. 3d 855 (S.D. Tex. 2015) .......................................................................... 17

*Sleekez, LLC v. Horton*,
  CV 16-09-BLG-SPW-TJC, 2017 WL 1906957 (D. Mont. Apr. 21, 2017) ........................ 10

*Symphony Health Sols. Corp. v. IMS Health Inc.*,
  No. CIV.A. 13-4290, 2014 WL 4063360 (E.D. Pa. Aug. 15, 2014) ................................ 20

*Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*,
  15–cv–211, 2016 WL 5338550 (S.D.N.Y. Sept. 23, 2016) ........................................ 10, 11

*Synthes, Inc. v. Emerge Med., Inc.*,
  25 F. Supp. 3d 617 (E.D. Pa. 2014) ............................................................................. 22

*Synthes, Inc. v Emerge Med., Inc.*,
  CIV.A. 11-1566, 2012 WL 4205476 (E.D. Pa. Sept. 19, 2012) .................... 12, 15, 17, 23, 24

*Synthes (U.S.A.) v. Globus Med., Inc.*,
  No. Civ.A.04–1235, 2005 WL 2233441 (E.D. Pa. Sept. 14, 2005) ............................. 23, 24

*United States v. MacEwan*,
    445 F.3d 237 (3d Cir. 2006) ..................................................................17

**Statutes**

Computer Fraud and Abuse Act, 18 U.S.C.A. § 1030 .............................................1, 2, 15, 16, 17

18 U.S.C. § 1839 ..........................................................................................................10

Defend Trade Secrets Act, 18 U.S.C. §§ 1832–39 ..............................................*passim*

Pennsylvania Uniform Trade Secrets Act, 12 P.S. 5301 ......................................*passim*

**Other Authorities**

Federal Rule of Civil Procedure 8(a)(2) ................................................................8, 16

## INTRODUCTION

A trusted employee of Plaintiff Teva Pharmaceuticals USA, Inc. ("Teva USA") was involved in a romantic relationship with the CEO of a direct competitor and engaged in a clandestine scheme with that CEO and his company to steal Teva USA's trade secrets and other confidential information. It sounds like the script to a television "movie of the week," but this is no fiction. This is the story underlying Teva USA's Complaint against its former employee Defendant Barinder Sandhu ("Sandhu"), Defendant Jeremy Desai ("Desai"), and Defendants Apotex Inc. and Apotex Corp. (together, "Apotex"). (*See* Compl. at ECF No. 1.) Based on this conduct, Teva USA brings claims under the Defend Trade Secrets Act, 18 U.S.C. §§ 1832–39 ("DTSA"), Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"), and Pennsylvania Uniform Trade Secrets Act, 12 P.S. 5301 ("PUTSA"). Teva USA also brings common law claims under Pennsylvania law.

Despite Teva USA's detailed Complaint and ongoing production of documents to support its allegations (including voluntarily producing its trade secrets and other confidential information subject to protective order guidelines), Apotex filed a motion to dismiss. But Apotex's motion is nothing more than an attempt to hold Teva USA to a higher pleading standard than is required under the Federal Rules of Civil Procedure and Supreme Court precedent in *Twombly* and *Iqbal*. In short, Teva USA adequately pleads its causes of action, and Apotex's motion should be denied in its entirety.

First, any argument that Teva USA failed to allege a misappropriation of its trade secrets after the enactment of DTSA, *i.e.*, May 11, 2016, is not accurate. Teva USA alleges disclosures of its trade secrets both before and after this date, as well as Apotex's continued use after the enactment date of earlier misappropriated trade secrets. As this District's Chief Judge Stengel

recently found, such allegations are sufficient to survive a motion to dismiss. *See Brand Energy & Infrastructure Services, Inc. v. Irex Contr. Group*, CV 16-2499, 2017 WL 1105648 (E.D. Pa. Mar. 24, 2017) (denying motion to dismiss where plaintiff alleged that defendant continued to use trade secrets after May 11, 2016).

Second, Apotex's assertion that Teva USA did not adequately identify—with "particularity"—the trade secrets Apotex acquired and used, the security measures protecting such secrets, and the value of the trade secrets, is baseless. There is no requirement to plead misappropriation claims with particularity. *See, e.g., Alpha Pro Tech, Inc. v. VWR Int'l LLC*, 984 F. Supp. 2d 425, 436 (E.D. Pa. 2013) ("a claim for misappropriation of trade secrets need not be pleaded with particularity"). Teva USA detailed its efforts to protect its trade secrets, the value of those trade secrets to Teva USA in developing and bringing its products to market, and that Apotex's misappropriation allowed Apotex to develop its own competing products and gain a competitive advantage over Teva USA. Indeed, this entire argument is simply disingenuous in light of Teva USA's detailed Complaint coupled with having already identified "Product X;" voluntarily producing more than 40,000 pages to Apotex, including the CRL, and email communications between Sandhu and Desai at his Apotex email account (jdesai@apotex.com); and Apotex's counsel conceding at the preliminary conference that the CRL contains trade secrets.

Third, Teva USA has satisfied all pleading requirements for its Computer Fraud and Abuse Act claim. Teva USA alleges a recoverable loss under the statute, *i.e.*, the cost of its investigation into the wrongful taking of information from Teva USA's computers. Teva USA also alleges Apotex indirectly accessed its computers without authorization when its CEO (Desai) encouraged Sandhu to improperly send Teva USA trade secrets to him by email,

accessed USB drives containing Teva USA trade secrets misappropriated by Sandhu from its computer systems, and directed Sandhu to give him access to the cloud drive on which she, without authorization, stored Teva USA trade secrets misappropriated from its computer system. Finally, Teva USA appropriately alleges access of a protected computer inasmuch as the Complaint details the ways in which the unauthorized access took place via the Internet pursuant to Defendants' larger scheme.

Fourth, Apotex's argument that the Pennsylvania Trade Secrets Act preempts Teva USA's common law claims flatly fails. Several Eastern District of Pennsylvania opinions have held that no such preemption exists.

Lastly, Apotex's remaining arguments directed at Teva USA's common law claims are equally flawed. Apotex repeatedly ignores Teva USA's substantive allegations and relies on case law that is inapplicable to the Complaint. None of Teva USA's common law causes of action should be dismissed.

**RELEVANT FACTUAL BACKGROUND**

**A.     Teva USA Learns of Defendants' Misappropriation**

Teva USA is a manufacturer of specialty and generic pharmaceuticals, and is the world's largest maker of generic pharmaceutical products. (*See* Compl. at ¶ 1.) Teva USA filed this action when it learned that Sandhu, who was at all relevant times Senior Director of Regulatory Affairs, U.S. Generics, at Teva USA, breached her Confidentiality Agreement (executed on or about May 24, 2012) with, and fiduciary duty to, Teva USA by improperly sharing Teva USA's trade secrets and other confidential information with Desai and through him with Apotex. (*Id.* at ¶¶ 2–4, 34, 44, 48.) Desai, a senior executive and then the President and Chief Executive Officer ("CEO") of Apotex, one of Teva USA's direct competitors in the generic pharmaceutical market, was involved in a romantic relationship with Sandhu. (*Id.* at ¶¶ 5–6, 46.)

Sandhu was a trusted Teva USA employee, who gave Teva USA no reason to question her loyalties or Teva USA's reasonable belief that Sandhu would not knowingly and intentionally disclose Teva USA's trade secrets and other confidential information. (*Id.* at ¶ 47.) Teva USA later learned, however, that while it employed Sandhu, she intentionally shared with Desai, and through him with Apotex, trade secrets and other confidential information about Teva USA's products in development, including "Product X"[1]. (*Id.* at ¶ 7.) The trade secrets and other confidential information to which Sandhu had access included documents with details on the regulatory status of all of Teva USA's products in development and on the market, which are highly confidential because they address, among other things, when certain products may come to market and/or issues that may affect the current status of products already on the market. (*Id.* at ¶ 55.) These documents include a highly confidential correspondence from the FDA to Teva USA, known as a Complete Response Letter ("CRL"), discussing Product X. A CRL is a confidential communication from the FDA by which the FDA provides comments on a drug application for which a drug maker is seeking FDA approval.[2] (*Id.* at ¶¶ 56–57.)

After Teva USA uncovered Sandhu's misappropriation of trade secrets, it terminated her employment on October 11, 2016. (*Id.* at ¶ 81.) Apotex and Desai used, both before and after Sandhu's termination, Teva USA's trade secrets and other confidential information to benefit Apotex's own competitive product development, thereby allowing Desai and Apotex to improperly profit at Teva USA's expense. (*Id.* at ¶¶ 8, 107–11.)

---

[1] "Product X" is a Teva USA product under development, the specific identity of which was concealed in the Complaint to prevent additional disclosure of Teva USA's confidential information. Since that time, Teva USA disclosed the specific product to all Defendants and to the Court at the preliminary conference.

[2] At the preliminary conference, on August 16, 2017, Apotex's counsel conceded that the CRL contains trade secrets.

**B.** **Defendants' Scheme to Steal Teva USA's Trade Secrets and Other Confidential Information**

Sandhu intentionally misappropriated and shared Teva USA's trade secrets and other confidential information by a variety of means that harmed Teva USA and improperly benefited Sandhu, Desai, and Apotex. (*Id.* at ¶ 9.) Teva USA affirmatively established, through its investigation, that Sandhu knowingly and without authorization emailed Teva USA trade secrets and other confidential information, many specifically marked "Confidential," to her personal email account and to Desai at his Apotex email account (jdesai@apotex.com) and thus through him directly to Apotex.[3] (*Id.* at ¶¶ 10–11, 66.) In violation of Teva USA's policies, of which Sandhu was well aware, Sandhu used USB flash drives on her work-issued laptop to copy Teva USA files containing trade secrets and other confidential information from its computer system. (*Id.* at ¶¶ 13, 39, 50, 52.) In fact, Teva USA, through its investigation, established that Sandhu connected at least ten different USB drives throughout 2015 and 2016, with her last recorded improper use of a USB drive occurring in July 2016. (*Id.* at ¶¶ 75–78.)

As part of Defendants' scheme, Sandhu also created a folder on her Teva USA-issued laptop titled "MyDrive" that synced to a cloud drive, *i.e.,* an internet-based repository that allowed Sandhu to back up the files on her company-issued laptop to the cloud so that she could access them anywhere and share them with anyone. (*Id.* at ¶ 67.) Sandhu did not have authorization to install a cloud back-up on her laptop, and it violated Teva USA's policies to do so. (*Id.* at ¶¶ 73–74.) Sandhu's MyDrive folder contained hundreds of Teva USA files,

---

[3] Copies of these emails and the attached Teva USA documents already have been provided to Apotex as part of Teva USA's initial disclosures. Nowhere in its motion does Apotex contend that Teva USA has improperly identified Desai's Apotex email address or that Desai did not receive the emails and their attachments from Sandhu.

including trade secrets and other confidential information. Sandhu uploaded files into her MyDrive folder continuously from October 2014 through as late as August 2016. (*Id.* at ¶ 69.) As an example, on August 8, 2016, Sandhu uploaded an excel spreadsheet containing trade secrets and other confidential information detailing the regulatory status of dozens of pre-approval and post-approval products, and notes on confidential communications with the FDA regarding Teva USA's active drug submissions. (*Id.* at ¶ 70.) Desai and Apotex accessed Teva USA's trade secrets and confidential information with the intent to use it, and did use it, to further their own competitive products, gain insight into Teva USA's products in development, and improve their competitiveness in the generics market at Teva USA's expense. (*Id.* at ¶ 71.)

Sandhu emailed the documents to Desai and her personal email account, saved them to the cloud, and downloaded them to the USB drives, in order to share the documents with Desai and Apotex without detection by Teva USA. (*Id.* at ¶¶ 12, 14–15, 72, 79.) Sandhu also verbally communicated and provided printed copies of Teva USA trade secrets and other confidential information to Desai and Apotex. (*Id.* at ¶¶ 16–18.)

Each of these acts by Sandhu in concert with Desai and Apotex circumvented Teva USA's investment of substantial resources in protecting its trade secrets and other confidential information by limiting access to information in a variety of ways, including, but not limited to, only disseminating information to those Teva USA personnel with a need to know the information, limiting electronic access to documents by departments and/or functions, utilizing secure information technology systems with password protection, and by maintaining building security personnel (and secure entrances). (*Id.* at ¶¶ 53, 95.)

### C. Apotex's Improper Use of Teva USA's Trade Secrets and Other Confidential Information

In the summer of 2016, Teva USA learned from a former Apotex employee that Desai and Apotex used the misappropriated information to gain a competitive advantage over Teva USA. In particular, the former Apotex employee[4] informed Teva USA that on at least one occasion, Apotex employees openly discussed the CRL, which contained Teva USA's trade secrets and other confidential information related to Product X, in a roundtable discussion in an effort to advance Apotex's potential market position of its competing generic product. (*Id.* at ¶¶ 19–20, 56.) Teva USA specifically alleges that Desai and Apotex used the information in the CRL to speed the regulatory approval of its competing product, and that they used and continue to use the information in the CRL to advance the market position of its competing product in, among other things, making purchasing decisions and setting production goals that increase Apotex's profits and visibility in the marketplace. (*Id.* at ¶¶ 60–61.) It further alleges that Teva USA has reason to believe, based on information learned from that same former employee, that Sandhu disclosed to Desai and Apotex Teva USA's confidential corporate information, and that Apotex used that information to adopt a similar company structure at Apotex. (*Id.* at ¶¶ 62–63.)

Not surprisingly, without discovery, Teva USA cannot know the full extent of Apotex's use of Teva USA's trade secrets and other confidential information. However, Teva USA reasonably believes that Desai and/or Apotex profited from the misappropriation of Teva USA's trade secrets and other confidential information, and they continue to improperly retain and profit

---

[4] As part of its initial disclosures Teva USA provided Apotex with the identity of the former Apotex employee. Notably, nowhere in Apotex's motion does it even suggest that these allegations are untrue.

from Teva USA's trade secrets and other confidential information. (*Id.* at ¶¶ 21–22.)[5] Indeed, each of these acts by Sandhu were for her own benefit, whether monetary or personal, and to benefit Desai and Apotex. Desai and/or Apotex knew that Sandhu was misappropriating Teva USA's trade secrets and other confidential information for the benefit of Desai and/or Apotex, and that Apotex, by and through Desai, engaged in efforts to induce Sandhu to improperly disclose Teva USA's trade secrets and other confidential information to Apotex, and actively encouraged Sandhu to breach her Confidentiality Agreement with Teva USA by failing to object to the repeated improper diversion of Teva USA's trade secrets and other confidential information by Sandhu. (*Id.* at ¶¶ 82–84.) Apotex, by and through its CEO and President, Desai, aided, assisted and/or encouraged Sandhu to access and impermissibly obtain Teva USA's trade secrets and other confidential information with the intent to make further use of Teva USA's trade secrets and other confidential information for its own benefit. (*Id.* at ¶¶ 85–86.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Detailed factual allegations are not required. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009); *Twombly*, 550 U.S. at 555. A complaint will survive dismissal if its well-pled facts "state a claim to relief that is plausible on its face." *Twombly*, 550

---

[5] Subsequent to Teva USA filing its Complaint, it received an anonymous report from an Apotex employee that Jeff Watson (Apotex's President of Global Generics), Peter Hardwick (Apotex's Senior Vice-President of Commercial Operations), and other senior leaders in Apotex's executive team received from Desai (who obtained it from Sandhu, "his girlfriend") "confidential Teva [USA] information including business strategy, structure and organizational charts." Teva USA promptly disclosed this information to Apotex (and the other Defendants).

U.S. at 570. To satisfy this standard, the complaint must contain enough "factual content ... to draw the reasonable inference that [D]efendant[s are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). The court must accept as true all factual allegations and draw any and all inferences derived from those facts in a light most favorable to the plaintiff, here Teva USA. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). A plaintiff may make allegations on information and belief if the facts are within the defendants' possession, and the court will assume their truth for the purposes of the motion. *McDermott v. Clondalkin Grp.*, 649 F. App'x 263, 267–68 (3d Cir. 2016) (noting that an argument "insinuating that the Federal Rules of Civil Procedure do not permit facts pleaded upon information and belief to serve as the sole basis for relief—is plainly incorrect"); *Certainteed Ceilings Corp. v. Aiken*, No. CIV.A. 14-3925, 2015 WL 410029, *3 (E.D. Pa. Jan. 29, 2015) (citing Third Circuit law that facts alleged on information and belief will be accepted as true for purposes of motion to dismiss on the pleadings). In doing so, the court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *See Twombly*, 550 U.S. at 556. In short, a motion to dismiss should be denied if a party alleges facts that, if established at trial, could entitle it to relief. *Id.* at 563 n. 8 (citation omitted).

## ARGUMENT

## I. DTSA APPLIES BECAUSE APOTEX MISAPPROPRIATED AND USED TRADE SECRETS AFTER ENACTMENT OF THE STATUTE

Relying on legal authority outside of the Eastern District of Pennsylvania, Apotex argues that DTSA does not apply here because "Teva fails to plead that Apotex engaged in any purported act of trade secret misappropriation on or after May 11, 2016," the date the statute came into effect. (*See* Apotex Br. at 1, 6–7.) However, contrary to Apotex's representation,

Teva USA alleges continued use and misappropriation of its trade secrets after May 11, 2016. (*See* Compl. at ¶¶ 8, 22, 61, 86, 110.)

DTSA defines "misappropriation" to include "*disclosure or use* of a trade secret of another without express or implied consent . . ." 18 U.S.C. § 1839(5)(B) (emphasis added). Consistent with this language, the majority of courts, including a recent Eastern District of Pennsylvania decision, apply DTSA "to misappropriations that began prior to the DTSA's enactment if the misappropriation continues to occur after the enactment date." *Brand Energy & Infrastructure Services, Inc. v. Irex Contr. Group*, CV 16-2499, 2017 WL 1105648, *4 (E.D. Pa. Mar. 24, 2017).[6] Therefore, a court should deny a motion to dismiss where a plaintiff alleges continued use of a competitor's trade secrets after May 11, 2016.

Chief Judge Stengel's recent decision in *Brand Energy* is directly on point.[7] There, plaintiffs alleged that individual defendants stole Brand Energy's business information beginning in 2014, and that the corporate defendant's use of the misappropriated trade secrets was ongoing, and continued after May 11, 2016. *Brand Energy*, 2017 WL 1105648, at *1–2, 4. Similar to here, the individual defendants in *Brand Energy* argued that DTSA did not apply because the alleged misappropriation occurred prior to the statute's enactment. The court disagreed and denied the individual defendants' motion to dismiss based on allegations, some made on

---

[6]  *See also Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*, 15–cv–211, 2016 WL 5338550, *6 (S.D.N.Y. Sept. 23, 2016) (holding that acquisition of trade secrets before the enactment of DTSA that were used after enactment of DTSA violates the statute); *Adams Arms, LLC v. Unified Weapon Sys., Inc.*, 16–cv–1503, 2016 WL 5391394, *5–7 (M.D. Fla. Sept. 27, 2016) (same); *Sleekez, LLC v. Horton*, CV 16-09-BLG-SPW-TJC, 2017 WL 1906957, *5–6 (D. Mont. Apr. 21, 2017) (same) (citing *Brand Energy*, *Syntel*, and *Adams Arms*), report and recommendation adopted, CV 16-09-BLG-SPW, 2017 WL 1929473 (D. Mont. May 9, 2017); *Agilysys, Inc. v. Hall*, 1:16-CV-3557-ELR, 2017 WL 2903364, *10–11 (N.D. Ga. May 25, 2017) (same).

[7]  Unsurprisingly, Apotex does no more than cite *Brand Energy* in a footnote, and fails to cite any other authority within the Eastern District of Pennsylvania to support its position.

information and belief, that plaintiff had reliable information of the defendants' continued and ongoing use and access to plaintiffs' documents. *Id.* at *4; Brand Energy's Amended Compl. at ¶¶ 189, 191, 210, 214, 363, *Brand Energy*, 5:16-CV-02499, Dkt. 61 (Aug. 17, 2016).[8]

For similar reasons, Apotex's motion to dismiss should be denied. Teva USA alleges that it learned in the summer of 2016 from a former Apotex employee that Apotex has been using the Product X CRL to make purchasing and production decisions to increase its profits and advance its market position (*see* Compl. at ¶¶ 59–61), and Teva USA's corporate information to adopt a similar company structure (*id.* at ¶¶ 62–63). These allegations state a plausible claim under DTSA. *See Syntel*, 2016 WL 5338550, at *6 (denying motion to dismiss because defendants alleged continued use after enactment of DTSA); *cf. Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-02177 SI, 2017 WL 1436044, *5 (N.D. Cal. Apr. 24, 2017) (dismissing a DTSA claim because, unlike the instant case, plaintiff did not allege any use occurred after May 11, 2016).

Teva USA also sufficiently pleads a separate disclosure of new trade secrets after May 11, 2016. Specifically, as recently as August 2016, as part of the ongoing scheme to steal Teva USA's trade secrets, Sandhu uploaded a document containing confidential information on the regulatory status of dozens of Teva USA products to a cloud drive to provide access to Desai

---

[8] Rather than applying *Brand Energy*, an on point case from the Eastern District of Pennsylvania that reflects the majority view, Apotex improperly relies in large part on *Avago Techs. U.S. Inc. v. Nanoprecision Prod., Inc.*, a Northern District of California decision that held DTSA only applies to acts of misappropriation occurring after May 11, 2016, rather than use after that date. No. 16-3737 JCS, 2017 WL 412524, at *9 (N.D. Cal. Jan. 31, 2017). But even under the Northern District of California's reasoning, Teva USA alleges sufficient post-May 11, 2016 conduct.

and Apotex.[9]  (*See* Compl. at ¶¶ 67–72.)  Under any pleading standard, these allegations are sufficient to state a claim under DTSA.

## II.    <u>TEVA USA STATES A TRADE SECRETS CLAIM UNDER DTSA AND PUTSA</u>

Apotex asserts that Teva USA fails to identify with adequate particularity the trade secrets Apotex acquired and used.  (*See* Apotex Br. at 9–13.)  This argument is both disingenuous and contrary to the law.  As Apotex knows, Teva USA disclosed the Product X CRL and other of the misappropriated documents prior to the filing of this motion.  Further, at the preliminary conference before the Court, Apotex conceded the CRL contained trade secrets.  Apotex is well-aware of the diverted trade secrets and other confidential information at issue here.

But even if Teva USA had not made these disclosures, and Apotex had not conceded the trade secret status of the CRL, "a claim for misappropriation of trade secrets need not be pleaded with particularity."  *See Alpha Pro Tech, Inc. v. VWR Int'l LLC*, 984 F. Supp. 2d 425, 436 (E.D. Pa. 2013) (denying motion to dismiss PUTSA claim) (citation omitted).[10]

---

[9] Apotex claims that these allegations are too vague to survive a motion to dismiss.  But DTSA claims do not carry a heightened pleading standard.  To survive a motion to dismiss on a DTSA claim, "[p]laintiffs need not make out specific allegations as to exactly how Defendants used or disclosed Plaintiff[s'] trade secrets . . . and Plaintiff[s are] entitled to seek discovery to support [their] allegations setting forth a prima facie claim."  *See Chubb Ina Holdings Inc. v. Chang*, CV 16-2354-BRM-DEA, 2017 WL 499682, *10 (D.N.J. Feb. 7, 2017) (denying motion to dismiss DTSA claim because no heightened pleading standard and because general allegations of use of trade secrets permitted at pleading stage prior to discovery).

Apotex also makes much of the fact that Teva USA pleads allegations "on information and belief."  Yet, Teva USA is permitted to plead general allegations on information and belief in instances when, as here, the more specific information is in the hands of defendants. *McDermott*, 649 F.App'x at 267–68 (recognizing that "information and belief" allegations are permissible in cases where information is "peculiarly within the defendant's knowledge or control" (citations omitted)).

[10] *See also Synthes, Inc. v Emerge Med., Inc.*, CIV.A. 11-1566, 2012 WL 4205476, *27 (E.D. Pa. Sept. 19, 2012) (denying motion to dismiss because whether information is a trade secret is a question of fact, and because allegations of misappropriation of trade secrets need not be made with particularity) (collecting cases); *Grow Fin. Fed. Credit Union v. GTE Fed. Credit Union*, 8:17-CV-1239-T-30JSS,

This only makes sense. "[C]ourts are in general agreement that trade secrets need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secret." *See Pennfield Precision, Inc. v. EF Precision, Inc.*, No. CIV.A. 00-280, 2000 WL 1201381, *4 (E.D. Pa. Aug. 15, 2000) (citation omitted). At this stage, Teva USA has more than adequately pled the existence of trade secrets that were acquired and used by Apotex, and has disclosed the identity of those trade secrets to Defendants privately and to the Court during the preliminary conference.

In addition to identifying the trade secrets at issue, Teva USA also adequately pleads a trade secrets claim. Teva USA alleges that Sandhu shared Teva USA's trade secrets with Desai and Apotex by emailing documents to Desai, disclosing them via USB flash drives, disclosing printed materials, discussing them verbally, and syncing a cloud-drive to her company-issued laptop. (*See* Compl. at ¶¶ 7, 10–18, 56, 62, 66–72, 75–79, 106.) Sandhu had access to documents with details on the regulatory status of all Teva USA's products in development and those on the market; disclosed information regarding Teva USA's products in development, including the highly confidential Project X CRL to Apotex; disclosed Teva USA's confidential corporate information, including information regarding company structure; and uploaded documents containing trade secrets detailing the regulatory status of dozens of pre-approval and post-approval products as part of a scheme with Apotex to misappropriate such information. (*Id.* at ¶¶ 7, 55–58, 69–70, 72, 79, 88.)

---

2017 WL 3492707, *4 (M.D. Fla. Aug. 15, 2017) (denying motion to dismiss as pled with sufficient particularity where, as here, plaintiff alleged disclosures by email, provided a specific example of trade secrets, and alleged continuing use).

In addition to the continuing uses of Teva USA's trade secrets that have been discussed in detail above, Teva USA alleges that Apotex used the misappropriated trade secrets to aid in the development and sales of its competing products, and circulated and discussed the Project X CRL in an attempt to speed the regulatory approval and advance the market share of Apotex's competing product. (*Id.* at ¶¶ 19–20, 59–61, 105.) These allegations, taken together, are more than sufficient, at the motion to dismiss stage, to plead a trade secrets claim under DTSA and PUTSA.

Finally, Apotex incorrectly contends that Teva USA fails to plead "the value of the trade secrets, the reasonable security measures employed to protect the trade secret, and the lack of availability of the trade secrets through proper means." (*See* Apotex Br. at 11.) To the contrary, Teva USA alleges that the misappropriated trade secrets are essential to Teva USA developing and bringing its products to market, and that Apotex's misappropriation of that information allowed Apotex to develop its own competing products and gain a competitive advantage over Teva USA.[11] (*See* Compl. at ¶¶ 19, 60–61, 93.) Teva USA pleads the secrecy and security measures regarding the trade secrets at issue with ample factual allegations. (*Id.* at ¶¶ 53, 95.) In addition, Sandhu executed a confidentiality agreement upon joining Teva USA that forbade the disclosure of Teva USA's trade secrets, and wherein she agreed to abide by company policies which mandated her to protect such information, refrain from copying and removing documents without approval, and keep information secure. (*Id.* at ¶¶ 34, 39, 48–52, 73–74, 77–78.) *See*

---

[11] In any event, a plaintiff need not plead specific damages to survive a motion to dismiss a misappropriation of trade secrets claim. See *Council for Educ. Travel, USA v. Czopek*, No. 1:11-CV-00672, 2011 WL 3882474, *6 (M.D. Pa. Sept. 2, 2011) (citing *First Am. Marketing Corp. v. Canella*, 2004 U.S. Dist. LEXIS 2251, *25, 2004 WL 250537 (E.D. Pa. Jan. 26, 2004); *IDT Corp. v. Unlimited Recharge, Inc.*, No. CIV.A. 11-4992 ES, 2012 WL 4050298, *7 (D.N.J. Sept. 13, 2012) (Allegations that plaintiff has suffered damages is sufficient to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

*Certainteed Ceilings Corp.*, 2015 WL 410029, *5 (Plaintiff "alleged that [it] protects [its trade secrets] with noncompete covenants and employment agreements. These allegations adequately plead the existence of . . . their protected status.").

III.   **TEVA USA PROPERLY STATES A CLAIM UNDER CFAA**

Teva USA also adequately states a claim under CFAA. "To bring a claim pursuant to § 1030(a)(4) of the CFAA, a plaintiff must allege: (1) that the defendant has accessed a 'protected computer'; (2) has done so without authorization or by exceeding such authorization as was granted; (3) has done so 'knowingly' and with 'intent to defraud'; and (4) as a result has 'further[ed] the intended fraud and obtain[ed] anything of value.'" *Synthes, Inc. v. Emerge Med., Inc.*, No. CIV.A. 11-1566, 2012 WL 4205476, at *15 (E.D. Pa. Sept. 19, 2012) (quoting 18 U.S.C. § 1030(a)(4)).

Apotex argues that Teva USA fails to allege: "(1) the type of loss protected under the CFAA; (2) Apotex accessed Teva's computers; and (3) Teva's computers constitute protected computers under the CFAA." (*See* Apotex Br. at 13.) These arguments fail.

A.   **Teva USA Pleads a Compensable Loss under CFAA in the Form of Expenditures on its Investigation**

Under CFAA, a recoverable loss includes the cost of an investigation to "analyze and assess the extent of [] wrongful taking of information from [plaintiff's] computers." *Aquent LLC v. Stapleton*, 65 F.Supp.3d 1339, 1345 (M.D. Fl. 2014); 18 U.S.C.A. § 1030(e)(11) ("the term 'loss' means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense ...."). In *Carnegie Strategic Design Engineers, LLC v. Cloherty*, the defendant argued that allegations that plaintiff retained a forensic expert to identify the stolen data was not an adequately pled loss. No. CIV.A. 13-1112, 2014 WL 896636, *4 (W.D.

Pa. Mar. 6, 2014). The court disagreed, holding that alleging loss of productivity due to an in-house investigation sufficiently pled a loss under the statute. *Id.*

Apotex argues that Teva USA fails to plead a cognizable loss under the CFAA. (*See* Apotex Br. at 13–14.) To the contrary, Teva USA pleads that Defendants' conduct prompted Teva USA to initiate an internal investigation into its electronic systems, one that continues to the present. Specifically, Teva USA alleges that upon learning of Sandhu's misappropriation, it opened an internal investigation to search her laptop and email account. (*See* Compl. at ¶ 64.) The Complaint details some of the results of that investigation from which one can infer that a substantial amount of time and resources were expended on the investigation. (*Id.* at ¶¶ 66–70) (describing the discovery of emails and a folder synced to a cloud drive). Teva USA's allegations that it incurred more than $5,000 in losses as a result of the unauthorized access to its protected computers (*id.* at ¶¶ 126–129) are sufficient at the motion to dismiss stage. *Personalized Brokerage Servs., LLC v. Lucius*, No. CIV. 05-1663 PAM/FLN, 2006 WL 208781, at *2 (D. Minn. Jan. 26, 2006) (denying motion to dismiss CFAA claim in part because FRCP 8 "does not require [plaintiff] to identify its precise damages" in its pleading).

**B.     Apotex Accessed Teva USA Computers When Its CEO Directed Sandhu to Give Him Access to the Cloud Drive, Email him Documents, and Provide Documents on USB Drives**

Apotex argues that it could not have accessed Teva USA's protected computers without authorization because its access is derivative of Sandhu's, and Sandhu had authorization to access Teva USA's computers. (*See* Apotex Br. at 17.) Apotex misstates the law with regard to indirect access of a protected computer under the CFAA.

"Unlike claims of direct authorized access, a person may be liable if he directs, encourages, or induces someone else to access a computer that he himself is not authorized to access. This theory of liability is premised on the concept that 'access' may be achieved through

another person." *Brand Energy*, 2017 WL 1105648, at \*15 (*citing Advanced Fluid Sys., Inc. v. Huber*, 28 F. Supp. 3d 306, 327 (M.D. Pa. 2014)); *Binary Semantics, Ltd. v. Minitab, Inc.*, No. Civ.A.07–1750, 2008 WL 763575, \*5 (M.D. Pa. Mar. 20, 2008) (holding corporate defendant liable under the CFAA for indirect access when plaintiff's employee accessed plaintiff's protected computer to steal trade secrets to provide to the corporate defendant.

Teva USA alleges that Apotex and Desai gained access to its computers through Sandhu, who was induced to provide such access by Apotex and Desai, and that Sandhu's access was without authorization, in excess of her authorization, and in violation of Teva USA's policies. (*See* Compl. at ¶¶ 9–18, 66–72, 79–80, 84–85.) These allegations are similar to those made in *Synthes, Inc.* that Judge Buckwalter held to state a claim. *See Synthes, Inc.*, 2012 WL 4205476, at \*17 (holding that the complaint adequately pled indirect access by alleging the defendant "improperly and unlawfully acquired, used, and disclosed Synthes' confidential, sensitive, proprietary, and trade secret information, including ... information they acquired by directing, inducing and encouraging others to access Synthes' computer systems.").

C.      **Teva USA Pleads Access to a Protected Computer**

A "protected computer" is one that "is used in or affecting interstate or foreign commerce or communication." CFAA § 1030(e)(2)(B). "[A]ny computer with Internet access is a 'protected computer.'" *Estes Forwarding Worldwide LLC v. Cuellar*, 239 F. Supp. 3d 918, 926 (E.D. Va. 2017); *Simmonds Equip., LLC v. GGR Int'l, Inc.*, 126 F. Supp. 3d 855, 863 (S.D. Tex. 2015) ("Pleading specific facts that the defendant accessed a computer connected to the internet is sufficient to stablish that the accessed computer was 'protected.'"). *See also United States v. MacEwan*, 445 F.3d 237, 245 (3d Cir. 2006) (concluding that the "Internet is an instrumentality and channel of interstate commerce"). Contrary to Apotex's argument that Teva USA's allegations of a protected computer are too "threadbare" (s*ee* Apotex Br. at 18) Teva USA

adequately alleges connection to the Internet by Sandhu emailing documents to Desai and to her private email account, and syncing a folder on her computer to a cloud drive. (*See* Compl. at ¶¶ 66–69.) Email and cloud drives are applications that, by definition, use the Internet such that Teva USA adequately alleged a protected computer.

## IV.    TEVA USA'S TORT CLAIMS ARE NOT PREEMPTED BY PUTSA

Apotex's argument that Teva USA's torts claims should be dismissed as preempted by PUTSA is contrary to the weight of the case law in this district.  "Within the Commonwealth, '[t]he vast majority of courts to have addressed whether PUTSA preempts common law tort claims on a motion to dismiss have determined that such a determination is inappropriate in such circumstances.'"  *N. Am. Commc'ns, Inc. v. Sessa*, No. CIV.A. 3:14-227, 2015 WL 5714514, *8 (W.D. Pa. Sept. 29, 2015) (citing eight Pennsylvania federal district court decisions denying motions to dismiss on these grounds).  Determination of whether stolen information constitutes a trade secret is a fact-intensive inquiry, and one that is premature to determine with discovery still in its infancy.  *Kimberton Healthcare Consulting, Inc. v. Primary PhysicianCare, Inc.*, No. CIV.A. 11-4568, 2011 WL 6046923, *5 (E.D. Pa. Dec. 6, 2011) (denying motion to dismiss tort claims as preempted by PUTSA because no discovery has been had into whether the stolen information constitutes a trade secret).[12]

Apotex ignores authority within Pennsylvania and the Third Circuit and instead relies solely on two decisions in California, one state and one federal, applying the California Uniform

---

[12]  *See also Hecht v. BabyAge.com, Inc.*, No. 3:10–CV–724, 2010 WL 3940882, *5 (M.D. Pa. Oct.6, 2010) (declining to decide PUTSA preemption issue on motion to dismiss because "the existence of a trade secret" is a "determination [that] requires discovery"); *Cenveo Corp. v. Slater*, No. CIV A 06-CV-2632, 2007 WL 527720, *3–4 (E.D. Pa. Feb. 12, 2007) (denying motion to dismiss because preempting plaintiff's tort claim "at the motion to dismiss stage risks leaving the claimant [] without a remedy" if the stolen information is later determined not to be a protected trade secret).

Trade Secrets Act ("CUTSA")—not PUTSA. (*See* Apotex Br. at 19 (*citing Avago Technologies U.S. Inc. v. Nanoprecision Prods., Inc.*, 2017 WL 412524 *5–6 (N.D. Cal. Jan. 31 2017); and *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App 4th 210, 236 (2010).) In those decisions, the courts base their holdings on the view that under California law a plaintiff has no property interest in any information other than trade secrets. *Silvaco Data Sys.*, 184 Cal. App. 4th at 239. Apotex provides no argument or evidence that the same rationale applies under Pennsylvania law. Clearly, the federal courts of Pennsylvania disagree. *See, e.g.*, *N. Am. Commc'ns,* 2015 WL 5714514, at *8. Accordingly, Teva USA's common law claims are not preempted by PUTSA and Apotex's motion to dismiss on those grounds should be rejected.

## V.     APOTEX TORTIOUSLY INTERFERED WITH TEVA USA'S CONFIDENTIALITY AGREEMENT WITH SANDHU

Apotex argues that Teva USA fails to allege facts sufficient to plead that Apotex took purposeful action specifically intended to harm Teva USA. (*See* Apotex Br. at 20, *citing* Compl. at ¶ 141.) In making this argument, Apotex ignores the body of allegations throughout the Complaint. For example, Teva USA makes several allegations, (*see, e.g.*, Compl. at ¶¶ 83–85), that are more than sufficient to state a plausible claim that Apotex and Desai took purposeful action to induce Sandhu to breach her confidentiality agreement. *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678. Teva USA alleges that during Sandhu's employment with Teva USA, she provided Teva USA's trade secrets and other confidential information to Desai (s*ee, e.g.,* Compl. at ¶¶ 7, 10, 15, 16, 18, 56, 62) by emailing documents to Desai and by uploading documents to a cloud-based repository (*id.* at ¶¶ 66–69.).[13] Desai accessed (and did not reject

---

[13]  Teva USA has produced all of these documents to Apotex.

receipt of) the documents sent by email and through the cloud over a period of at least two years. (*Id.* at ¶¶ 71–72, 83–85.) As the CEO of Apotex, Desai understood that receiving a direct competitor's trade secrets and confidential information would violate any confidentiality agreement, employment agreement, or company policies that Sandhu had agreed to when accepting her position with Teva USA. (*Id.* at ¶ 140.) The fact that Desai received multiple documents containing trade secrets and confidential information over a lengthy period of time without taking any steps to stop the behavior or alert Teva USA to its employee's misconduct is more than enough to raise an inference that Sandhu acted at the direction of Desai and Apotex. *See Symphony Health Sols. Corp. v. IMS Health Inc.*, No. CIV.A. 13-4290, 2014 WL 4063360, *2 (E.D. Pa. Aug. 15, 2014) (denying motion to dismiss tortious interference claim because assessing conduct is a fact intensive inquiry that should not be resolved on the pleadings).

To the extent Apotex is arguing that it is not liable for the acts of its CEO (Desai), the doctrines of vicarious liability and respondeat superior hold employers liable for the torts of their employees committed within the scope of their employment. *Meyer v. Holley*, 537 U.S. 280, 285 (2003) ("It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment.") Teva USA makes factual allegations sufficient for the court to draw a reasonable inference that Desai acted in the scope of his employment. (*See* Compl. at ¶¶ 59–61.) The Court can infer from such use that Desai acted within the scope of his employment as Apotex's CEO in directing his employees to discuss and make use of the CRL.

Apotex does not cite a case that supports its view that these allegations are "insufficient to meet the plausibility standard." (*See* Apotex Br. at 20.) Rather, it cites only *Culinary Serv. of Delaware Valley, Inc. v. Borough of Yardley, Pa*, in which the court dismissed a tortious

interference claim because the plaintiff alleged conduct—that defendants made statements critical of an agreement—that did not show intent to cause the termination of the agreement. 385 F. App'x 135, 143 (3d Cir. 2010). In this case, Teva USA alleges intentional conduct by Desai and Apotex—causing Sandhu to send them Teva USA's trade secrets—that breached Sandhu's confidentiality agreement. (*See* Compl. at ¶¶ 48–50, 73, 77, 83–85.)

## VI. APOTEX AIDED AND ABETTED SANDHU'S BREACH OF HER FIDUCIARY DUTY TO TEVA USA

Apotex makes two arguments against the aiding and abetting a breach of fiduciary duty claim: (1) that because Teva USA has no claim for breach of fiduciary duty claim against Sandhu under the "gist of the action doctrine" and "economic loss doctrine" it therefore has no derivative claim against Apotex for aiding and abetting; and (2) Teva USA does not adequately allege Apotex's substantial assistance in Sandhu's breach. (*See* Apotex Br. at 21–22.)

### A. Teva USA's Claim Against Apotex is Independent of its Claim Against Sandhu

Teva USA states meritorious claims against Sandhu for both breach of contract and breach of fiduciary duty. Contrary to Apotex's assertion, Pennsylvania law permits side-by-side contract and tort claims under the circumstances here.

The gist of the action doctrine permits the claims to coexist if the breach of fiduciary duty claim is based on duties that go beyond those imposed by the contract. *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 104–05 (3d Cir. 2001) (declining to dismiss breach of fiduciary duty claim under gist of the action doctrine where defendant's fiduciary obligations arose "as a matter of social policy" from the law of torts). Here, the Confidentiality Agreement imposes a contractual duty on Sandhu to keep Teva USA's trade secrets and business information confidential. (*See* Compl. at ¶ 48.) The common law imposes on Sandhu the additional fiduciary obligations of loyalty and good faith, including an obligation not to assist her

employer's competitor.  *Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617, 667 (E.D. Pa. 2014).  The contract was breached by Sandhu's failure to abide by it.  Her fiduciary duties were breached by her collaboration with a competitor for the competitor's and her own benefit.

The economic loss doctrine does not, as Apotex described, preclude recovery of economic losses unless there is physical harm to person or property.  (*See* Apotex Br. at 21.) Rather, it precludes a plaintiff from recovery in tort for economic losses flowing from a contract "when loss of the benefit of the bargain is the plaintiff's sole loss."  *Bohler-Uddeholm Am., Inc.*, 247 F.3d at 104.  The doctrine originates in products liability cases where a defective product causes economic harm (by being defective) but does not physically harm the buyer.  *Id*. at 104 n.11.  This is not a products liability case.  Teva USA's loss is also not limited to loss of the benefit of the bargain as it includes the facts that documents are no longer confidential and that Sandhu gave the trade secrets and confidential business information to a competitor for that competitor to use in competition with Teva USA.

Because the applicability of these doctrines requires "factual intensive inquiry," courts routinely deny motions to dismiss that rely on these doctrines.  *Kimberton Healthcare*, 2011 WL 6046923, at *8 (denying motion to dismiss tort claims related to misappropriation of trade secrets due to necessity of discovery, and listing similar decisions by Pennsylvania federal district courts).  Teva USA has a breach of fiduciary duty claim that is distinct from its breach of contract claim based Sandhu's collaboration with Desai and Apotex in competition with her employer. Any doubts as to the scope of the contract duties in comparison to common law duties, should await the completion of discovery for their resolution.

**B.** **Teva USA Pleads Apotex's and Desai's Substantial Assistance to Sandhu in Her Breach of Fiduciary Duty to Teva USA**

Apotex's argument that Teva USA is required to allege facts showing "substantial assistance or encouragement to harm" Teva USA misstates the law. (*See* Apotex Br. at 22.) The "substantial assistance" element does not require detailed allegations of active participation to survive a motion to dismiss. *Matlack Leasing LLC v. Morison Cogen, LLP*, No. 09-cv-1570, 2010 WL 114883, *11–12 (E.D. Pa. 2010) (allegations sufficient where the plaintiff alleged that the primary defendants' accountants knew or were willfully blind to the breach and failed to disclose it); *Bucci v. Wachovia Bank, N.A.*, No. CIV.A. 08-1478, 2009 WL 1740503, *4 (E.D. Pa. June 17, 2009) (bank employee's willful blindness to customer's irregular banking practices aided and abetted customer's breach of fiduciary duties).

Here, Teva USA alleges that Sandhu owed a fiduciary duty to Teva USA; that Desai and Apotex knew of that duty; that Desai and Apotex knew that the information being obtained from Teva USA's computers and other sources contained trade secrets and other confidential information; that they knowingly assisted and encouraged Sandhu to breach her duties to Teva USA, by, among other things, inducing, condoning, encouraging, supporting, and failing to object to Sandhu's misuse and misappropriation of Teva USA's trade secrets and other confidential information. (*See* Compl. at ¶¶ 159–62.) Clearly, Teva USA has pled more than the "boilerplate allegations of inducement" of which Apotex complains.

## VII. APOTEX ENGAGED IN UNFAIR COMPETITION

"Pennsylvania courts have recognized a cause of action for the common law tort of unfair competition where there is evidence of, among other things … unlawful use of confidential information." *Synthes (U.S.A.) v. Globus Med., Inc.*, No. Civ.A.04–1235, 2005 WL 2233441, at *8 (E.D. Pa. Sept. 14, 2005); *Synthes, Inc.*, 2012 WL 4205476, at *14. In *Synthes Inc.*, Judge

Buckwalter denied a motion to dismiss an unfair competition claim on allegations of defendants "misappropriating confidential, proprietary, and trade secret information" and "tortiously interfering with [plaintiff's] contractual relationships." *Id.*

Apotex argues that Teva USA's unfair competition claim fails to allege "substantial interference" with Teva USA's business with "tangible market impact," citing only *AutoTrakk, LLC v. Auto. Leasing Specialists, Inc.*, No. 4:16-CV-01981, 2017 WL 2936730 (M.D. Pa. July 10, 2017). (*See* Apotex Br. at 22.) In *AutoTrakk*, Judge Brand of the Middle District of Pennsylvania explains why he departs from the standard employed by other courts in Pennsylvania for evaluating unfair competition claims. 2017 WL 2936730, at *12–15. Apotex, however, does not note this departure, nor attempt to support it over the standard used by several judges in the Eastern District of Pennsylvania. *See, e.g.*, *Synthes (U.S.A.)*, 2005 WL 2233441, at *8; *Synthes, Inc.*, 2012 WL 4205476, at *14.

Moreover, like the plaintiff in *Synthes Inc.*, Teva USA alleges that Apotex obtained Teva USA trade secrets and other confidential information through Sandhu's email correspondence to Desai, that Apotex's misappropriation and misuse of Teva USA's trade secrets and other confidential information constitutes unfair competition and that by tortiously interfering with the Confidentiality Agreement, and aiding and abetting Sandhu's breach of her fiduciary duty to Teva USA, Apotex has unfairly received the benefit of its wrongful exploitation, constituting unfair competition. (*See* Compl. at ¶ 183, 185–86.) These allegations sufficiently state a cause of action for unfair competition under the case law in this district.

## VIII. <u>APOTEX ENGAGED IN CONVERSION</u>

Apotex argues that Teva USA's conversion claim fails to allege sufficient factual allegations of Apotex's "use" or "possession" of the trade secrets and confidential information

misappropriated by Sandhu. Apotex, however, cites no cases and points to no Complaint allegations as inadequate.

Conversion is "the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification." *Leonard A. Feinberg, Inc. v. Cent. Asia Capital Corp., Ltd.*, 974 F. Supp. 822, 844–45 (E.D. Pa. 1997) (citation omitted). Pennsylvania recognizes a cause of action for conversion of both trade secrets and confidential information. *See Hill v. Best Med. Int'l, Inc.*, No. 07-1709, 2011 WL 5082208, *15 (W.D. Pa. Oct. 25, 2011) (noting that after enactment of PUTSA, courts continue to recognize a separate tort of conversion for confidential or proprietary information); *Am. Hearing Aid Assocs., Inc. v. GN Resound N. Am.*, 309 F. Supp. 2d 694, 705 (E.D. Pa. 2004) ("Pennsylvania law does allow for trade secrets to be the subject of a conversion claim.") (citation omitted).

In *Neopart Transit, LLC v. Mgmt. Consulting, Inc.*, No. CV 16-3103, 2017 WL 714043, *2, 13–14 (E.D. Pa. Feb. 23, 2017), the court found that the plaintiff stated a claim for conversion by alleging that Neopart's former employee provided the defendants with information in violation of his confidentiality agreement, when he downloaded email files and other documents to a thumb drive and gave it to the defendants.

Teva USA makes similar allegations in its Complaint. (*See* Compl. at ¶¶ 189, 66, 191.) Teva USA further alleges that Desai and Apotex "unlawfully exercised control over Teva USA's property, and unlawfully retained control over the property and used it for the benefit of Defendants, as opposed to objecting to its improper and unlawful diversion." (*Id.* at ¶ 192.) Thus, as in *Neopart Transit, LLC,* Teva USA states a claim for conversion against Apotex.

## IX.    APOTEX PROCURED INFORMATION BY IMPROPER MEANS

Apotex states, without elaboration, that Teva USA does not sufficiently allege facts to support a cause of action for procuring information by improper means.  "One who, for the purposes of advancing a rival business interest, procures by improper means information about another's business is liable to the other for the harm caused by his possession, disclosure or use of the information." *Pestco, Inc. v. Associated Prods., Inc.*, 880 A.2d 700, 708–09 (Pa. Super. Ct. 2005) (citing Restatement of Torts § 759).  Teva USA states sufficiently this claim, alleging that Desai and Apotex, as direct competitors of Teva USA, for the purposes of advancing their own business interests, to gain a competitive edge over Teva USA, procured Teva USA's trade secret and confidential information through improper means.  (*See* Compl. at ¶¶ 197–99.)  Those improper means, i.e. the receipt of email and access to a cloud drive, are well stated in the Complaint.  (*Id.* at ¶¶ 10, 18–19, 66, 71, 83–85.)

In *Pestco, Inc.*, the Superior Court of Pennsylvania affirmed the judgment against the defendants for procuring information by improper means where it was undisputed that the parties' trucking contractor "improperly showed [the defendants] bills of lading belonging to [the plaintiff], their primary competitor" which contained confidential customer information.  880 A.2d at 709. Similarly, Teva USA alleges that Sandhu improperly showed Desai and thereby Apotex trade secrets and confidential information belonging to Teva USA.

## CONCLUSION

For the foregoing reasons, Apotex's Rule 12(b)(6) Motion to Dismiss should be denied in its entirety.

Dated: September 14, 2017
      New York, New York

By: _____
      Paul S. Danner
      Matthew S. Trokenheim
      GOLDBERG SEGALLA LLP
      711 3rd Avenue
      Suite 1900
      New York, New York 10017-4013
      Phone: 973-681-7000
      Fax: 973-681-7101
      Email: pdanner@goldbergsegalla.com
      Email: mtrokenheim@goldbergsegalla.com
      (Admitted *pro hac vice*)

By: /s/ Michael A. Schwartz _____
      Michael A. Schwartz (PA 60234)
      Eric S. Merin (PA 320857)
      PEPPER HAMILTON LLP
      3000 Two Logan Square
      18th and Arch Streets
      Philadelphia, PA 19103
      Phone: 215-981-4494
      Fax: 800-615-2315
      Email: schwartzma@pepperlaw.com
      Email: merine@pepperlaw.com

      *Attorneys for Plaintiff*
      *Teva Pharmaceuticals USA, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TEVA PHARMACEUTICALS USA, INC., | CIVIL ACTION |
| Plaintiff, | NO. 2:17-cv-03031-TJS |
| -vs- | |
| BARINDER SANDHU, JEREMY DESAI, APOTEX INC., and APOTEX CORP., | **CERTIFICATE OF SERVICE** |
| Defendants. | |

The undersigned hereby certifies that Plaintiff Teva Pharmaceuticals USA, Inc.'s Opposition to Apotex Inc. and Apotex Corp's Motion to Dismiss was filed electronically and is available for viewing and downloading from the Court's ECF system. Notice of this filing will be sent to all counsel of record by operation of the ECF system and upon Defendants by electronic mail to:

Lisa A. Mathewson
The Law Offices of Lisa A. Mathewson
123 South Broad Street
Philadelphia, PA 19109
Phone: 215-399-9592
Email: lam@mathewson-law.com

*Counsel for Defendant Barinder Sandhu*

Barry Gross
David J. Woolf
Drinker Biddle & Reath LLP
One Logan Square, Ste. 2000
Philadelphia, Pennsylvania 19103-6996
Phone: 215-988-2872
Email: barry.gross@dbr.com
Email: david.woolf@dbr.com

*Counsel for Defendant Jeremy Desai*

Abraham C. Reich
Steven K. Ludwig
Brian A. Berkley
Fox Rothschild LLP
2000 Market Street
20th Floor
Philadelphia, PA 19103-3222
Phone: 215-299-2090
Email: areich@foxrothschild.com
Email: sludwig@foxrothschild.com
Email: bberkley@foxrothschild.com

*Counsel for Defendants Apotex Inc. and Apotex Corp.*

Dated: September 14, 2017

/s/ Eric S. Merin_____

Eric S. Merin